JOHN D. LONG & another, trustees, *vs.* SIMMONS FEMALE COLLEGE.

Suffolk.    March 10, 1914. — May 25, 1914.

Present: RUGG, C. J., LORING, BRALEY, SHELDON, & CROSBY, JJ.

*Probate Court,* Jurisdiction.    *Trust,* Mortgage of trust estate.    *Mortgage.    Constitutional Law.*

Under St. 1872, c. 370, (now included in R. L. c. 147, § 18,) the Probate Court had jurisdiction not only to empower trustees under a will who owned real estate, the buildings on which were destroyed in the great Boston fire of 1872, to mortgage the property for the purpose of paying the expense of erecting new buildings upon the premises, but also to order that twenty-five per cent of the net rents of the mortgaged estate be reserved for the payment of the principal of the mortgage note, although provisions of the will under which the trustees held the real estate were that the income thereof should be paid to a certain person for her life in the discretion of the trustees, and that such income as was not paid to that person should be paid into another trust fund, and that, at the death of the beneficiary, the principal of the trust but none of the accumulated income should be added to a trust fund for the foundation of a college.

A decree of the Probate Court, granting a petition of trustees under St. 1872, c. 370, (now included in R. L. c. 147, § 18,) for leave to mortgage real estate for the purpose of paying the expense of replacing buildings destroyed by fire, the petition requesting also an order that twenty-five per cent of the net rents from the premises be reserved for the payment of the principal of the mortgage note, is valid, although notice of it was given only by publication, and there were persons living who were life beneficiaries of the trust estate and whose children also might become beneficiaries.

St. 1872, c. 370, (now included in R. L. c. 147, § 18,) providing that the Probate
Court may authorize trustees holding real estate to mortgage it "for the pur-
pose of paying the sums assessed thereon for betterments, or the expense of
repairs and improvements thereon made necessary by such betterments, or by
the lawful taking of such estate, or any part thereof, by any city or town, or
for the purpose of paying the expense of erecting, altering, completing, repair-
ing or improving any building on such estate, when it shall appear to the court
to be for the interest of such estate;" and also "that the interest on such
mortgage, and any portion of the principal which the court may order, shall be
paid out of the income derived from the estate mortgaged as herein provided,"
is constitutional.

BILL IN EQUITY, filed in the Supreme Judicial Court on No-
vember 14, 1913, and afterwards amended, by the trustees under
the will and codicil of John Simmons late of Boston, against Sim-
mons Female College, a Massachusetts corporation. The mate-
rial allegations of the bill were in substance as follows:

The will of John Simmons was allowed in 1870. The fourth
article of the will gave a "granite building" at the corner of
Congress Street and Water Street, and a "granite-front store" on
Franklin Street and Hawley Street, together with the land under
and appurtenant to them, to trustees, the plaintiffs' predecessors,
in trust to pay the income "or so much thereof as said Trustees
shall see fit" to the testator's daughter Alvina White, "and so
much of said remainder as shall not be paid, applied or used,"
the trustees were directed to hold subject to the provisions of
article six of the will, which established a trust in certain property,
the income of which was to be paid to the testator's granddaughter
Anna White (afterwards Mrs. Henry S. Rowe) and her issue. On
the death of Alvina the trustees were directed to add the property
described in article four, exclusive of the accumulation of income,
which was to be subject to the provisions of article six, to a fund
established by article sixteen for the foundation of Simmons Fe-
male College. The trustees were given no power to mortgage
real estate.

The buildings described in article four were destroyed in the
great Boston fire in 1872. At a special session of the Legislature,
St. 1872, c. 370, was enacted, repealing St. 1869, c. 451, and pro-
viding in § 1 that "Probate courts, having jurisdiction under the
provisions of this act, after notice to all persons interested, and
hearing thereon, may authorize any trustee or trustees appointed
under any will, trust, deed or indenture, and having the control

or management of any real estate, to mortgage the same for the purpose of paying the sums assessed thereon for betterments, or the expense of repairs and improvements thereon made necessary by such betterments, or by the lawful taking of such estate, or any part thereof, by any city or town, or for the purpose of paying the expense of erecting, altering, completing, repairing or improving any building on such estate, when it shall appear to the court to be for the interest of such estate; and the interest on such mortgage, and any portion of the principal which the court may order, shall be paid out of the income derived from the estate mortgaged as herein provided."

Section 2 provided that "the petition shall set forth a description of the estate to be mortgaged, the amount necessary to be raised, and the purposes for which the same is to be used, and shall be made to the probate court for the county where the will under which such trustee or trustees were appointed was proved, in case the trust was created by will, or in the county where the trust estate, or any part thereof is located, in case such trust was created by deed or indenture; and the decree of the court thereon shall fix the amount for which the mortgage may be given, and the rate of interest which may be paid thereon."

A third section related to the form of the mortgage, and to the giving of a bond by the trustees.

The bill alleged that, under the foregoing statute, predecessors of the plaintiffs "on June 4, 1873, filed their first petition for leave to mortgage real estate for the purpose of erecting new buildings; and thereafter they filed numerous other petitions for the same purpose, and for the purpose of paying off existing mortgages; and in all these petitions the trustees prayed that the court fix the amount of principal to be paid out of income to be derived from the mortgaged estate. . . . The petitions did not set forth the peculiar provisions of the trusts established by the fourth and sixth articles of the will nor call attention in any way to the question as to how the payment of the principal of the mortgage out of income to be derived from the mortgaged estate would affect the rights of the several beneficiaries. No notice of the said petitions was given, except general notice by publication; no guardian *ad litem* was appointed to represent the interest of the minor or unborn children of Mrs. Rowe; and no persons other

than the trustees were actually represented in or made parties to the proceedings upon any of said petitions." The Probate Court, by decrees authorizing mortgages, "directed that twenty-five per cent of the net rents of the mortgaged estate be reserved for the payment of principal, subject to the further order of the court. The trustees accordingly did reserve twenty-five per cent of the net rents remaining after payment of mortgage interest, taxes, expenses of repairs and of management during the lifetime of Alvina White" for a number of years. Mrs. White died in 1886.

The defendant was incorporated in 1899, and the trustees shortly afterwards conveyed to it the fund which had accumulated in their hands. The real estate at the corner of Water Street and Congress Street had been mortgaged by them in 1874, under the decree of the Probate Court, for $355,000. Payments, entered as from "cash" in their books, had been made from time to time, until, at the time of the conveyance to the defendant, the mortgage amounted to $150,000. Upon the Franklin Street estate the original mortgage was $110,000, while at the time of the transfer to the defendant it was $97,550.53.

Further allegations of the bill were:

"These orders of the Probate Court were not intended to supersede or vary the provisions of the will, nor could they have such an effect. The payments upon principal do not correspond in amount with the amounts reserved under these orders of the Probate Court; all these reservations were directed to be made 'subject to the further order' of the court and no 'further orders' were made by the Probate Court; the payments of principal do not appear to have been made from income reserved by order of the Probate Court, and such payments should not be charged against income reserved from the trust established for the benefit of Mrs. White, because the will directs that such income, if not paid over to her, shall be added to the trust estate established by the sixth article for the benefit of Anna Rowe and her children.

"The trustees preceding the plaintiffs, by their books and accounts, have treated the amount of these reservations as if invested in the buildings; and by transferring these buildings to the Simmons Female College, together with the other estate, which the trustees had in their hands accumulating for the benefit of Simmons Female College, without allowance for these invest-

ments, the college has been unjustly enriched to the extent of the amounts so reserved from the net rentals and interest thereon; such accumulations should have been separately invested, and added to the trust under the sixth article of the will."

The defendant demurred to the bill for want of equity and on other grounds. The case was reserved by *Hammond*, J., for determination by the full court.

*J. B. Warner*, for the defendant.

*W. D. Turner*, for the plaintiffs.

SHELDON, J. This case very probably might have been disposed of on the ground of the laches appearing on the face of the bill. But we prefer to deal with it on the merits.

The fundamental contention of the plaintiffs is that the part of the decree of the Probate Court which, after authorizing the giving of the mortgage by the trustees, directed them to reserve a stated portion of the income of the property as a fund for the payment of the principal of the debt, was invalid, and ought not to have been complied with at all by the trustees. If this contention fails, the bill cannot be maintained.

The decree was made on a petition filed by the trustees in 1873, after the destruction of the buildings by fire. The petition asked for leave to mortgage the real estate for the purpose of erecting a new building, and prayed that the court fix the amount of the principal to be paid out of the income of the mortgaged estate. Other similar petitions were filed by the trustees as to other estates, but we take the one first mentioned as a type of them all. The petitions are not before us, but the averments of the bill with regard to them are admitted by the demurrer. The petitions did not set forth the provisions of the fourth and sixth articles of the will, nor call attention in any way to the question as to how the provision for the payment of the principal of the mortgage out of the income would affect the rights of the several beneficiaries. No notice of the petitions was given except a general notice by publication. No guardian *ad litem* was appointed to represent the interests of the minor or unborn children of Mrs. Rowe. No persons other than the trustees were actually represented in or made parties to the proceedings.

We assume that the law in force in 1873, when the decree of the Probate Court was made, was as stated by Shaw, C. J., in

*Peters* v. *Peters*, 8 Cush. 529, 543 *et seq.*, — that is, that if the Probate Court, even though it had general jurisdiction over the subject matter, exceeded its powers or acted in a manner prohibited by law, its decrees were not merely irregular and voidable and so good until reversed in due course of law, but absolutely void and of no effect, and capable of being set aside in any collateral proceeding by plea and proof.

But this case does not come within that principle. The property held by the trustees included real estate. In the great Boston fire of 1872, the buildings thereon, like many others, were totally destroyed. It well may be that the land then could not have been sold, except at a sacrifice; it could yield no income unless new buildings should be erected; the money needed for this purpose could be obtained only by mortgaging the property. A building lease, so called, might be impracticable. As this trust (and many others) might be of long and undefined duration, and as buildings to be erected on the land might be subject to depreciation, and as it could not be expected that there would be any individual responsibility upon an indebtedness to be secured by a mortgage, the Legislature in enacting St. 1872, c. 370, and the Probate Court in passing decrees thereunder, might see plainly that the requisite amount could not be borrowed upon a mortgage, without some arrangement for its gradual reduction out of net income, instead of leaving it to be a final charge upon the corpus of the estate at some future time. It certainly was for the interest of life tenants, no less than of those in remainder, that the property should be put in condition to yield some net income rather than to be a charge upon the estate for its taxes. It was to meet such a state of affairs that the statute was passed. It provides a remedy which ordinarily will be for the advantage of all persons interested.

The petition filed in the Probate Court by the trustees in 1873 was like a proceeding *in rem* for the conservation of the estate as a whole for the benefit of all persons interested. Not only did the court have jurisdiction of the subject matter of the petition, but it had power to act and to make a decree, although no personal service of notice had been made upon those who were interested in the estate and although no guardian *ad litem* had been appointed to represent persons who were unborn or were under any disability. The trustees themselves represented all parties in interest. The

notice given generally by publication was sufficient. This was so held after careful consideration in *Warren* v. *Pazolt*, 203 Mass. 328, 345. Such notice was given; and not even this part of the decree of the Probate Court now is open to attack.

. It is not necessary to discuss the other questions which have been argued. The validity of the decree having been established, nothing is left but questions of accounting, as to which the jurisdiction of the Probate Court was and is exclusive.

We see no reason to doubt the constitutionality of St. 1872, c. 370, now included in R. L. c. 147, § 18. It comes within the reasoning of *Sohier* v. *Trinity Church*, 109 Mass. 1, 17, and *Old South Society* v. *Crocker*, 119 Mass. 1, 26.

As it is manifest that the bill cannot be maintained, the entry must be

*Demurrer sustained and bill dismissed with costs.*