JOSEPH S. SYLVESTER, JUNIOR, *vs.* CLARENCE L. NEWTON, executor, & others.

Plymouth. April 8, 1947. — June 6, 1947.

Present: FIELD, C.J., QUA, DOLAN, RONAN, & WILKINS, JJ.

*Executor and Administrator,* Sale of property. *Devise and Legacy,* Power of sale. *Evidence,* Competency, Extrinsic affecting writing. *Declaratory Judgment. Probate Court,* Declaratory relief.

A petition in equity in a Probate Court by a legatee under a will against the executor and other legatees, although entitled a "petition for instructions," was treated by this court as being what it was in essence and substance, namely, a petition in equity for a declaratory judgment and relief concerning the subject matter of the petition.

Upon a petition in equity in a Probate Court for a declaratory judgment
and relief, this court refused to disturb an executor's exercise of broad
discretionary powers of sale given him under the will, where it did not
appear that his exercise of discretion was arbitrary, capricious and
not in good faith.

Evidence of statements by a testator respecting the meaning of provisions
in his will was inadmissible where the language of the will was clear
and unambiguous.

PETITION, filed in the Probate Court for the county of
Plymouth on November 21, 1945.

The case was heard by *Davis,* J.

*J. A. Locke,* (*M. J. Murphy & C. B. Everberg* with him,)
for the petitioner.

*S. C. Rand,* (*C. L. Newton & R. S. Sylvester* with him,) for
the respondents.

DOLAN, J.  This is a petition, described as one for in-
structions as to the right of the petitioner "with respect to
the purchase of the farm lands and appurtenances thereof"
devised and bequeathed under the will of Samuel S. Syl-
vester, late of Hanover.  We treat the petition as being what
it is in its essence and substance, namely, a petition for a
declaratory judgment as to the rights of the petitioner con-
cerning the subject matter of the petition.  *E. S. Parks
Shellac Co.* v. *Jones,* 265 Mass. 108, 110.  *Universal Adjust-
ment Corp.* v. *Midland Bank, Ltd.* 281 Mass. 303, 328.
*Essex Trust Co.* v. *Averill, ante,* 68, 70–71.  The case comes
before us upon the petitioner's appeal from the decree
entered by the judge dismissing the petition.

The evidence is reported, and at the request of the peti-
tioner the judge made a report of the material facts found
by him.  See G. L. (Ter. Ed.) c. 215, § 11.  Material facts
found by the judge as well as other facts disclosed by the
evidence may be summed up as follows:  The testator died
on January 24, 1944, leaving as his heirs two nieces and six
nephews.  The petitioner is one of the nephews.  The other
nephews and the nieces are named together with the exec-
utor of the will of the testator as respondents in the present
case.  The will of the testator was allowed on November 13,
1944, but to be executed in accordance with an agreement
of compromise approved by the Probate Court on the same

day, and letters testamentary were duly issued to Clarence L. Newton, Esquire, the executor named in the will. The agreement of compromise did not affect in any way the terms of the will with which we are here concerned. We sum them up. By the twenty-fifth article of the will the testator authorized the executor of his will to sell and dispose of both real and personal estate forming a part of the estate at public or private sale; and also to determine what land went with or belonged to his home, and what personal property and personal estate went with or belonged to his home as "distinguished from the farm." The farm property and appurtenances are the properties here involved. As to those properties the testator provided as follows: "If my said brother Edmund Q. Sylvester shall predecease me, and if the farm, live stock, farm equipment and other chattels thereon or connected therewith now owned by my said brother and me as joint tenants, shall form part of my estate, I authorize and empower my executor, my substituted executors or my administrators with the will annexed as the case may be, and/or my trustee, original or substituted, if said farm, stock, equipment and other chattels above referred to shall form part of my trust estate, to sell the same as a whole or in parcels at public or private sale, and realizing that it may not be convenient or expedient to sell the same without considerable delay I authorize and empower them in their sole and uncontrolled discretion, if they shall deem it expedient, to operate said farm (even though such operation may be at a loss) or to lease or to let the same or to allow the same to lie idle until such time as they shall deem it wise to sell same and I exonerate them from all liability for any and all losses which may accrue or may be caused to my estate or my trust estate because of anything which they shall do or shall fail to do hereunder, except such as may be caused by their own willful and intentional wrong. I specifically authorize my said executor, my substituted executors or my administrators with the will annexed, as the case may be, and/or my trustee, original or substituted, as a matter of uncontrolled discretion to sell said farm, live stock, farm equipment and other chattels,

or any part or parts thereof, to any of my nephews and nieces hereinbefore named who may desire to purchase the same, at any price and upon any terms which such executor, executors, administrators, or trustee, original or substituted, may consider fair and reasonable in view of my desire to give preference to such nephews and nieces, even though a better price and/or more favorable terms might be obtainable from some other purchaser. If more than one of such nephews and nieces shall indicate a desire so to purchase, I suggest that preference be given to the one of them whose offer may be considered most attractive, taking into consideration the price and terms of payment offered, and the financial responsibility of the offeror." On December 12, 1944, the respondent executor (hereinafter referred to as the executor) sent a notice to the nephews and nieces of the testator, stating in substance that pursuant to the desire set forth in the testator's will he was inviting them, if interested, to submit an offer for the farm, indicating whether the offer included the real estate only, or real estate and farm equipment, or real estate, farm equipment and livestock. On January 5, 1945, the petitioner offered to buy the farm, to include the real estate, "all livestock, the farm truck, and all other miscellaneous farm and personal property," and all the outlying parcels of real estate used in the direct operation of the farm. The price offered to be paid by the petitioner was "the sum of $2,000, in cash and $10,000, additional cash, payable in two installments of $5,000 each, the first and second payments to be made by me out of the first and second installments of my distributive share of my Uncle Sam's estate." On January 23, 1945, the respondent Albert L. Sylvester, also a nephew of the testator, made an offer to the executor to purchase "the property known as the 'Stockbridge Farm' including all land, buildings, livestock, and such personal property as was not included in Samuel S. Sylvester's house, and including such assets as had been liquidated for $14,000, cash. In this offer the Stockbridge Farm was specified to include the 40¾ acres adjacent to the house of Edmund Q. Sylvester, the land

between Washington Street, Hanover, and Route 3 and the land west of Route 3. This offer also included an offer to pay $9,000, cash for the Edmund Q. Sylvester house and the 40¾ acres of land adjacent to it lying to the east of Washington St., and not including the livestock." A "difference of opinion" having arisen as to what real estate the executor was authorized to sell, the executor on October 25, 1945, sent a memorandum to the nephews and nieces of the testator, reciting that that question had been adjusted, setting out in detail the particular parcels of real estate, the livestock, all the farm machinery and equipment, the produce and all other personal property then belonging to the farm as the properties which the nephews and nieces were invited to make an offer for, and stating the terms as cash, taxes and insurance to be adjusted as of the date of the delivery of the deed. On October 31, 1945, the petitioner wrote to the executor and submitted an offer for the properties and assets listed in the memorandum of $14,000 in cash. On November 15, 1945, the executor, in accordance with an offer in writing, entered into "a purchase and sale agreement with Albert L. Sylvester, nephew of the deceased, whereby the executor agreed to sell and convey to him the 'Stockbridge Farm,' so called for the sum of Twenty Thousand ($20,000) Dollars." At that time Albert intended to sell the premises to one Albert S. Bigelow and at the time of the hearing in the court below had agreed to do so. The evidence does not show that, when the executor entered into the agreement to sell the premises to Albert, he knew that Albert intended to sell them to anyone. But the executor testified that, had he known at that time that Albert did so intend, he would nevertheless have accepted the larger offer, that there was enough "spread" so that he would have felt that it was his duty to accept the larger offer, and that he would not consider the offer of the petitioner fair and reasonable, with the information he had, other than the offer of Albert, "until and unless . . . [he] found that no one else would pay substantially more."

It is the contention of the petitioner that the executor

"unjustifiably repudiated the intent of the testator in disregarding the offer of" the petitioner. A consideration of the evidence and of the terms of the will does not support that conclusion. The testator in unambiguous language and unusually broad terms confided to the executor power to sell the farm and equipment in question, or in his sole uncontrolled discretion to operate the farm, even at a loss, or to lease it or to let it lie idle, until such time as he should deem it wise to sell, and exonerated him from all liability for any and all losses that might result, or for anything he might do in the administration of the estate except such as might be caused by his own wilful and intentional wrong. See *New England Trust Co.* v. *Paine*, 317 Mass. 542, 548–551. The authority confided by the will to the executor to sell the property involved or any part thereof to any of the nephews or nieces of the testator who might desire to purchase at any price or upon terms that the executor might deem fair and reasonable in view of the testator's desire to give them preference, even though a better price or more reasonable terms might be obtainable, was expressed by the testator to rest in the executor's "uncontrolled" discretion. That is true also concerning the suggestion of the testator that, if more than one of his nephews or nieces indicated a desire to purchase, preference be given to the one of them whose offer might be considered most attractive, taking into consideration the price and terms of payment offered and the financial responsibility of the offeror.

A reading of all the provisions of the will concerning the powers conferred upon the executor demonstrates that, in providing that in the matter of the management of property including its sale the executor was to have sole and uncontrolled discretion, the testator meant just that. It has been long established as matter of law that the judgment of this court cannot be substituted for the discretion conferred upon fiduciaries fairly, reasonably and honestly exercised. *Amory* v. *Green*, 13 Allen, 413, 416. *Eldredge* v. *Heard*, 106 Mass. 579, 582. *Proctor* v. *Heyer*, 122 Mass. 525, 529. Restatement: Trusts, § 187, comment e.. Scott on Trusts, § 187. See *Boyden* v. *Stevens*, 285 Mass. 176, 179. The

court will substitute its discretion only when that is necessary to prevent an abuse of discretion. *Dumaine* v. *Dumaine*, 301 Mass. 214, 222. In the instant case the only question is whether the exercise of discretion by the executor complained of was arbitrary, capricious and not in good faith. *Eustace* v. *Dickey*, 240 Mass. 55, 84. We are of opinion that the proper conclusion upon the evidence is that the discretion of the executor as to the subject matter involved was exercised by him fairly, reasonably, honestly, and in good faith within the broad powers conferred upon him by the will, and was not exercised in violation of or contrary to the intent of the testator as expressed in his will. Consequently the exercise of his discretion by the executor to sell the property in question to the respondent Albert L. Sylvester must stand.

There was no error in the exclusion of evidence offered by the petitioner to show that, prior to entering into the agreement to sell the property to Albert, the executor said that he hoped that the petitioner would get the farm; that he told counsel for the petitioner that he considered $12,000 a fair and reasonable price from a nephew under the terms of the will; that the testator made known to the executor his wishes that the farm, livestock and equipment be sold to the nephew or niece who showed the most interest; and to the effect that the petitioner had asked the manager of the farm to run the farm. The statements in question of the executor were only expressions of good will, and had no binding force. His conduct is to be weighed by what he did under the powers conferred upon him by the will and not by what the testator had said to him. The governing terms of the will are clear and unambiguous. The statements of the testator offered to be proved to show his intention were inadmissible. *Tucker* v. *Seaman's Aid Society*, 7 Met. 188. *Mahoney* v. *Grainger*, 283 Mass. 189, 191. *Adams* v. *Adams*, 308 Mass. 584, 590. No question was raised at the hearing concerning the petitioner's intention to operate the farm property if he obtained title to it.

The decree entered in the court below dismissing the petition is reversed and a final decree is to be entered adjudg-

ing that the petitioner is not entitled under the terms of the will of the testator to require the executor thereof to accept his offer for the purchase of the real estate and personal property in question and to convey or transfer the same to him. Costs and expenses of this appeal may be allowed in the discretion of the Probate Court to the respondents who participated therein, other than the executor (see *Frost* v. *Hunter*, 312 Mass. 16, 22).

*So ordered.*