MANCHIK et al. v. OLD COLONY TRUST CO. et al.

Civ. A. 50–903.

United States District Court
D. Massachusetts.

April 24, 1951.

Meyer Abrams, and Shulman, Shulman & Abrams, all of Chicago, Ill., Selwyn A. Kudish, Boston, Mass., for plaintiffs.

Sargent H. Wellman, Boston, Mass., for defendant North Terminal, Inc.

Alfred Gardner, Palmer, Dodge, Gardner, Bickford & Bradford, all of Boston, Mass., for defendant Old Colony Trust Co.

FORD, District Judge.

Plaintiff brings this action as holder of bonds of North Terminal, Inc., in the principal amount of $15,000 and of 20 shares (out of 260 shares outstanding) of the preferred stock of the same corporation. The bonds are part of a total of $479,500 issued by the corporation in 1936 in pursuance of a plan of reorganization approved by this court. The bonds were secured by a mortgage of the real estate of the corporation, consisting chiefly of a plot of land in Boston with a three-story truck garage thereon. This mortgage was given by a certain indenture entitled "First Mortgage and Deed of Trust", dated September 1, 1936, to defendant Old Colony Trust Company (hereinafter called Old Colony) as trustee for the bondholders. Interest on the bonds was paid, but when the bonds matured by their terms on September 1, 1950, payment of the principal was not made.

Shortly thereafter a plan was devised for the consolidation of North Terminal, Inc., (hereinafter called North Terminal) with its wholly owned subsidiary North Terminal Garage Company and a third corporation, North Terminal Machine Company, Inc. The latter corporation is the owner of bonds of the issue involved here in the amount of $129,500. Under the plan the consolidated corporation would place a new mortgage for $150,000 on the garage building which would have priority over the existing mortgage to Old Colony. From the proceeds a 30% payment on the principal of the outstanding bonds would be made. Payment of the remaining 70% would be extended for fifteen years. This unpaid 70% would bear interest at 4% from September 1, 1950 instead of the 5% interest rate payable under the original indenture. This 4% interest would be payable currently to the extent income is earned by the corporation but all interest not thus paid currently would be payable at the extended maturity date of the bonds in fifteen years. The sinking fund provisions of the present indenture, which were in fact never carried out, would be cancelled. Each share of the preferred stock of North Terminal now having a par value of $100 and callable at $105 would be exchanged for a share of Class A non-voting stock of the consolidated corporation callable at $10 per share, and having a $10 per share preference in liquidation but no preference as to dividends over the Class B common stock. The outstanding common stock of North Terminal would be cancelled with the holders receiving nothing in return therefor.

To effect such a consolidation the rights of the bondholders under the existing indenture must be modified. Under the provisions of the indenture the trustee is the representative of the bondholders. No action can be brought in their behalf by anyone but the trustee except in cases where the trustee fails to act upon a de-

mand of 51% of the bondholders. Article X, Section 6 of the indenture provides in part: " * * * The Trustee is hereby authorized and empowered to enter into any agreement with the Grantor modifying, amending, altering, releasing, waiving or supplementing any of the terms, conditions and provisions of this Indenture, and to consent to the renewal, replacement or substitution of any of the property covered by the lien of this Indenture, as provided herein, if it shall deem that the same is not detrimental to the best interests of the bondholders." The same section further provides: "And it is hereby convenanted and agreed that the decision of the Trustee as to the necessity or expediency of any action, and any action taken by the Trustee, pursuant to the authority vested in it by this Section 6, shall be conclusive and binding upon every bondholder and every person at any time claiming or to claim under this Indenture, and in no event shall the assent of any bondholder or person as aforesaid, other than the Trustee, be required to give binding effect thereto." The bonds contain a statement that reference is made to the First Mortgage and Deed of Trust "for a more particular description of * * * the rights and powers of the holders of the bonds, of the Grantor, and of the Trustee."

The trustee was requested by North Terminal to enter into a supplemental indenture modifying the provisions of the original indenture as necessary to effectuate the proposed plan of consolidation. It was represented that this plan had the approval of 51% of the bondholders. Old Colony thereupon brought a petition in the Probate Court for Suffolk County, Massachusetts, asking for instructions and a declaratory judgment as to its rights and powers under the provisions of the indenture to make the changes in the indenture and bonds provided for in the proposed supplemental indenture, and in particular as to its power to take such action without unanimous consent of the bondholders. Plaintiff here was not personally served in Massachusetts in the Probate Court action, but notice of the suit was given by publication in newspapers in Boston and New York, and by the sending of a copy of the citation by registered mail to each known bondholder. The complaint admits the receipt by plaintiff of written notice of the Probate Court proceedings together with a copy of the petition filed therein. A group of fifteen bondholders filed an answer in those proceedings, and were represented by counsel at the hearing on the petition. Other bondholders, including Manchik, did not appear in the state court proceedings. A guardian ad litem was appointed to represent the interests of unknown bondholders or those under disability. After hearing, the Probate Court in a decree dated February 20, 1951 found that it had jurisdiction of the subject matter of the petition, that the plan of consolidation had been made and presented in good faith, and that Old Colony, in good faith and in the exercise of reasonable judgment, deemed the plan not detrimental to the best interests of the bondholders and more to their interest than foreclosure of the mortgage and sale of the property. It instructed the trustee that under the deed of trust it had power to make the proposed changes in the indenture and bonds, and that such changes, after the consolidation had been effected, would be binding on all holders of the bonds.

The complaint, which was filed on November 16, 1950, asked for a temporary and permanent injunction against further proceedings in the action in the state court, for a finding that the trustee was disqualified and for the appointment of a receiver or successor-trustee. The request for a temporary injunction was not immediately pressed, and since the Probate Court proceedings have now terminated, plaintiff now asks that the enforcement of the decree of the Probate Court be enjoined. Both plaintiff and defendants have moved for summary judgment.

Plaintiff argues that 28 U.S.C. § 2283 forbidding any injunction to stay proceedings in a state court is inapplicable where the state court lacks jurisdiction. He contends (and on this point, he admits, his whole case must stand or fall) that in the proceedings already described, the Probate Court for Suffolk County was entirely

without jurisdiction and hence its decree is void and its enforcement should be enjoined.

■ Plaintiff's first point seems to be that since both he and his bonds are located in Illinois, and since no personal service was made on him in Massachusetts, a Massachusetts court can have no jurisdiction over him. But the proceedings in the state court involved not only a Massachusetts trustee, but also a trust estate which consisted of a mortgage of real property located in Massachusetts. In such a case not only does a Massachusetts court have jurisdiction, but Massachusetts is the forum in which proceedings affecting the trust must be brought. Restatement, Conflict of Laws, § 243.

■ Personal service within the jurisdiction on each of the widely scattered beneficiaries of the trust is not required. If it were there would in most cases be no forum in which all the interested parties could be joined in proceedings affecting the trust. The requirements of personal service found in Mass.G.L. (Ter.Ed.) Ch. 227, § 1 do not apply to such a proceeding, but are confined to strictly *in personam* actions at law. Rosenthal v. Maletz, 322 Mass. 586, 594, 78 N.E.2d 652, 1 A.L.R.2d 1022; Taplin v. Atwater, 297 Mass. 302, 8 N.E.2d 786. Proceedings in equity involving the affairs of a trust estate are considered to be in the nature of proceedings *in rem*, so that substituted service by means which under the circumstances are reasonably adapted to give actual notice of the proceedings to non-resident beneficiaries is sufficient, and they will be bound by the result of the proceedings. Long v. Simmons Female College, 218 Mass. 135, 140, 105 N.E. 553; Warren v. Pazolt, 203 Mass. 328, 345, 89 N. E. 381. Such substituted service was made in this case, in accordance with the practice of the Massachusetts courts. Plaintiff does not appear to contend that the method used failed to fulfill the due process requirements of the United States Constitution in respect of notice. Such a contention, in any event, would be untenable here. Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865.

■ Manchik's principal attack on the jurisdiction of the Probate Court, however, is his argument that the subject matter of the petition brought there, the interpretation of a trust created by a non-testamentary writing, is outside the limited jurisdiction conferred upon that court. Mass.G.L. (Ter.Ed.) Ch. 215, § 6 confers on the probate courts equity jurisdiction over matters relative "to trusts created by will or other written instrument". And under Mass.G.L. (Ter.Ed.) Ch. 231A, as added by St.1945, c. 582, that court is given power to make binding declarations of rights as to matters within its jurisdiction. Manchik contends that Wellesley College v. Attorney General, 313 Mass. 722, 49 N.E. 2d 220 limits the jurisdiction thus conferred to matters involving testamentary trusts alone. Clearly, the case made no such holding. What it specifically decided, 313 Mass. at page 728, 49 N.E.2d 220, was that a statute or special act incorporating a college was not a written instrument creating a trust within the meaning of Ch. 215, § 6. The court said nothing limiting the jurisdiction of the Probate Court to trusts of a testamentary nature, and regards the words "written instrument" in the statute as including 313 Mass. at page 728, 49 N.E. 2d at page 225 "a will, *deed* or *indenture* which a testator, *settlor* or *donor* executes and employs as a means of creating a trust." (Emphasis mine.) This clearly includes *inter vivos* trusts as well as those of a testamentary character. Indeed, the Massachusetts court has indicated that the decision in the Wellesley College case, supra, does not preclude a holding that the words "written instrument" in Ch. 215, § 6 includes also such non-testamentary documents as the written by-laws or recorded votes of a corporation or voluntary association. Massachusetts Charitable Mechanic Association v. Hersey, 318 Mass. 518, 519, 62 N.E.2d 597.

■ Plaintiff further argues that there was no jurisdiction since there was no fund in the hands of the trustee, no duty on the part of the trustee to act at its peril, and no doubt as to its powers and duties which would justify the maintenance of a bill for instructions. Cf. Wellesley Col-

lege v. Attorney General, supra, 313 Mass. at page 729, 49 N.E.2d 220. The Probate Court here had jurisdiction of the subject matter and the parties, and jurisdiction to grant the relief requested. The question of whether the bill set forth adequate grounds for the granting of the relief requested does not go to the jurisdiction of the court, and cannot be made the basis of a collateral attack on the decree. Massachusetts State Grange v. Benton, 272 U.S. 525, 528, 47 S. Ct. 189, 71 L.Ed. 387. The Probate Court's decision that the trustee's bill stated a case entitling it to the relief sought is conclusive on that issue. If what plaintiff claims in this argument is correct, it amounts at most only to an argument, not that the Probate Court had no power to grant the instructions and declaration asked for by the trustee but merely that the court in its discretion should have refused to grant the relief. Burn v. McAllister, 321 Mass. 660, 661, 75 N.E.2d 114. This court is not a court of review of the state court in its exercise of its discretion as to whether or not to grant relief which it has the power to give. Moreover, even if that question were still open to this court it would have to be decided adversely to plaintiff. The trustee, of course, did not hold a fund of money for distribution, but it did hold a valuable interest in real estate in the form of a mortgage. It may not have been under a strict duty to take any step in regard to the proposed merger but it did have a duty to exercise its powers and duties so as to promote the best interests of the holders of the defaulted bonds, and it did have a definite request that certain specific action be taken. And there certainly was doubt as to its powers and duties. That is clear from the very fact that Manchik here still contends that under the indenture the trustee did not have the powers which other interested parties argued it had and which the Probate Court has held it to have.

■ The Probate Court had jurisdiction over the subject matter and the parties to the suit before it and, so far as its decree decides the issues between Manchik and the other parties to the suit, it is binding upon them and not open to collateral attack in this court. The enforcement of that decree will not be enjoined.

Plaintiff also asks removal of the trustee and appointment of a receiver or successor trustee. No adequate reason has been alleged for removing the present trustee. Plaintiff has alleged nothing that indicates that the trustee has any interest adverse to that of the bondholders which will in any way be benefited by the adoption of the plan. There was clearly no wrong done in seeking instructions from the proper court as to the trustee's rights and duties. Plaintiff seems to accuse the trustee of conspiring with the other defendant in this case to enter into an inequitable scheme to the detriment of plaintiff. But it appears that this plan of consolidation has the approval of a majority of the bondholders, for plaintiff alleges that holders of 51% of the bonds have combined to effectuate the consolidation. The fact that the trustee has determined that a plan favored by a majority of the bondholders is a desirable one from the standpoint of the bondholders and has therefore decided to cooperate in putting the plan into effect is in itself no evidence of sinister conspiracy. North Terminal has defaulted on its bonds. Its assets consist chiefly of the mortgaged real estate, which the Probate Court found has a fair market value of not more than $250,000. Plaintiff insists it is worth more than that, but it seems reasonably certain that a foreclosure sale would not produce a fund sufficient to pay the bondholders in full. Under the proposed plan they would receive an immediate 30% cash payment. This would be made possible by the fact that North Terminal and its wholly owned subsidiary would be merged with a fully solvent corporation on the basis of whose credit a further loan could be made. The remaining amount of the principal of the bonds would be extended for fifteen years at a lower interest rate. The holders of preferred stock would receive new stock which is decidedly of much less value. It would be callable at $10 instead of $105 and has less favorable terms as to preferences given. The interest of the common stockholders of North Terminal would be entirely wiped out.

It is not for this court in this proceeding to determine whether or not this plan is in itself fair and equitable. By the purchase of these bonds plaintiff accepted the terms of the contract contained therein, including the provisions of the indenture which were incorporated therein by reference. The decision of the Probate Court has determined that the proposed modifications in the bonds and indenture are within the power of the trustee. The bondholders by the terms of their contract are bound by the changes made by the trustee, provided the trustee deems that such changes are not detrimental to the best interests of the bondholders. The Probate Court has also decided that the trustee has made such a determination and has made it in good faith. These issues cannot be re-litigated in this court. And under the terms of the bond and of the indenture, plaintiff is entitled to nothing more. Sylvester v. Newton, 321 Mass. 416, 421, 73 N.E.2d 585.

Plaintiff's claims for relief here have been considered solely on the basis of his rights as a holder of bonds of North Terminal since it appears that any relief he demands was based on his status as a bondholder. He also alleges that he is the owner of preferred stock of North Terminal, and intimates that the proposed consolidation is unfair to him in that capacity. But this question is not now before the court. This is not a proceeding under the Bankruptcy Act, 11 U.S.C.A. § 1 et seq., for a reorganization of the debtor corporation, and the proposed consolidation is not a plan of reorganization requiring the approval of this court. It is in fact a proposal for a corporate merger and consolidation under Mass.G.L. (Ter.Ed.) Ch. 156, § 46B, as added by St.1941, c. 514, § 2. Plaintiff's rights as a dissenting minority stockholder would seem to be those given him by § 46E of that chapter, as added by St.1941, c. 514, § 2, providing for payment to him of the value of his stock, to be determined, if necessary, by the method of appraisal provided for in § 46 of the chapter.

Plaintiff's motion for summary judgment is denied. Defendants' motions for summary judgment are allowed.

Judgment for defendants with costs.