CHARLES H. JUSTICE *vs.* N. J. SODERLUND & others.

Middlesex.   October 19, 1916. — December 2, 1916.

Present: RUGG, C. J., LORING, BRALEY, PIERCE, & CARROLL, JJ.

*Executor and Administrator.   Equity Jurisdiction,* Specific performance, Laches.
   *Deed.*

Where a will gives to the executor thereof the power to sell real estate for the
   payment of a mortgage debt and of legacies, if it appears that the amount of
   the mortgage debt is about $6,000, that the amount of the legacies is $19,500,
   that the personal estate of the testator was appraised in the inventory at
   $8,193 and that the debts, funeral expenses and taxes are about $5,143, the
   executor on. these facts has a right to sell real estate of the testator and
   can give a good title thereto without obtaining a license from the Probate
   Court.

An executor, who sells real estate under a power given him by the will of his tes-
   tator for the purpose of paying a mortgage debt and legacies, performs his
   duty to the purchaser by giving or tendering him a quitclaim deed containing
   the words "remise, release, and forever quitclaim" without using the word
   "grant."

Where a purchaser of a parcel of land from an executor at a sale made under a
   power in a will objects to a deed tendered him by the executor for certain
   reasons which prove to be groundless, the deed tendered by the executor being
   good and sufficient so far as those reasons are concerned, and does not object
   to the deed on account of any alleged error in the description of the land con-
   veyed, he cannot three years later, having never during that time made
   any tender of the balance of the purchase money, justify his refusal to ac-
   cept the deed on the ground that there was an error in such description,
   although correct by metes and bounds, in giving a wrong number as the
   number of the lot conveyed upon a plan referred to, which error, if it existed,
   would have been corrected immediately had it been pointed out when the
   deed first was tendered, and such laches on the part of the purchaser com-
   bined with his refusal to accept the deed, persisted in for three years without
   explanation, gives the executor the right to sell the parcel of land to another
   person.

In the case described above it appeared that, from the time of the purchase of
   the land to the time of its sale by the executor to another person three years
   later, the purchaser occupied and improved the land, but without the know-
   ledge of the executor.  *Held,* that such occupation and improvement without
   the knowledge of the executor did not affect the rights of the parties.

BILL IN EQUITY, filed in the Superior Court on November 18,
1915, alleging that the plaintiff is the owner of a parcel of land in
Newton designated as Lot 18 on a certain plan, and praying that

the defendants be enjoined from interfering with the plaintiff's possession, use and enjoyment of such parcel of land and that the defendants Weed and Robinson be ordered to execute a good and sufficient deed of said Lot 18 to the plaintiff.

In the Superior Court the case was heard by *McLaughlin, J.* He made a memorandum of findings including the facts that are stated in the opinion. The memorandum concluded as follows:

"The plaintiff, as I find, entered upon the premises, cultivated the land, setting out trees and shrubs, and has ever since had the possession and enjoyment of it as an appurtenance to his own homestead. So far as appeared, he has never made any tender of the balance [of the purchase money], nor has he taken action of any kind to enforce any supposed rights, and to the demands of the executors that he accept the proffered deed, his answer through his counsel has constantly been a refusal to take it in the form in which it was tendered.

"In the latter part of the year 1915, the executors sold and conveyed the lot in question to the defendant Soderlund, who, as I find, had notice of the transactions between the plaintiff and the executors. When the plaintiff learned of this sale, he brought his bill.

"I am satisfied that if the plaintiff had any rights, he slept upon them, and, thinking himself secure from interference, took no steps until November, 1915, when, hearing of the sale to Soderlund, he brought his bill three years after the date of the first sale.

"I am of the opinion, first, that a good and sufficient deed was tendered the plaintiff. It should be noted, in this connection, that in the deed which was offered the lot was wrongly numbered, but no objection was made at the time on that score, and the parties seemed to agree at the hearing that the error would have been immediately rectified if the deed had been satisfactory in other respects:

"Secondly, if the deed was not a good and sufficient one, the plaintiff did nothing for three years towards asserting his claim, but contributed by his own inaction to delaying the settlement of the estate, and was guilty of laches. For this reason, if for no other, his bill should be dismissed."

Later by order of the judge a final decree was entered dismissing the bill with costs, and the plaintiff appealed.

*R. W. Bartlett,* for the plaintiff.

*A. W. Blakemore,* (*H. A. Horgan* with him,) for the defendants.

CARROLL, J. Maria M. Gay, who died June 5, 1911, in the sixteenth clause of her will directed her executors to "sell such portion of my estate as may be necessary to pay off the mortgage now thereon, and then to sell such portion as may be necessary to pay the legacies herein made," and for this purpose they were authorized "to sell at their discretion the whole or any part of the said estate." The legacies amounted to $19,500. "The mortgages referred to in the will were somewhere about $5,500 or $6,000." Her personal estate was inventoried at $8,193.47. The debts, including funeral expenses and taxes, were approximately $5,143.

The testatrix owned a large tract of land in Newton, and the executors, acting under the powers in the will, without obtaining a license to sell from the Probate Court, sold at public auction, in October, 1912, some of the lots into which the tract was divided. The total amount of these sales was $18,176.60. "But four parcels were not taken . . . leaving a little over $10,000 actual money received from the auction sale which was not enough to pay the mortgages and legacies."

At this sale of October, 1912, the plaintiff purchased Lot No. 18 for $250.25, paying $100 at the time of sale. A quitclaim deed, unsigned, was prepared and sent to the attorney for the plaintiff, describing the land sold as Lot No. 27. The form of the deed was objected to on the ground that the executors had no title under the will and could not convey by quitclaim deed, and that a license from the Probate Court was necessary to make such a sale; but no objection was made to the deed because of the error in describing the number of the lot. Further correspondence passed between one of the executors and the representative of the plaintiff. The last letter was November 2, 1912, when the plaintiff was informed the executors had ready for delivery a deed of Lot 27.

The plaintiff entered upon the premises, cultivating the land and setting out shrubs and trees thereon, the executors paying the taxes. The plaintiff made no further effort to secure a deed

of the premises. In the latter part of 1915 the executors sold Lot 18 to the defendant Soderlund. In November, 1915, the plaintiff brought this bill for the specific performance of the contract of October, 1912, praying that the executor be directed to execute and deliver to him a good and sufficient deed of the lot purchased. In the Superior Court the bill was dismissed.

By the will of the testatrix the executors were given the power to sell her real estate for the payment of the mortgage and legacies. The evidence shows the sale to have been proper, for this purpose, and no license from the Probate Court was necessary. It was said by Chief Justice Shaw in *Going* v. *Emery,* 16 Pick. 107, 113, "Whenever an executor has a power under a will to sell real estate, no license of any court is necessary to, or can give any additional validity to any sale and conveyance which he may make. And it is considered a good reason for refusing such license, that the power already exists." See *McLaughlin* v. *Greene,* 198 Mass. 153, and cases cited. *Allen* v. *Dean,* 148 Mass. 594, relied on by the plaintiff, is not in conflict with this. In that case authority was given to sell the real estate "as the proper and convenient settlement of the estate may require." The settlement of the estate meant the settlement of the probate accounts, the payment of debts, legacies, and the charges of administration; and it was held that there was nothing in the will showing the testator used the words in any other sense, and no power was given to sell the real estate for the purpose of making partition among the devisees. In *Litchfield* v. *Cudworth,* 15 Pick. 23, the administrator was licensed to sell to the amount of $640. He sold the whole estate for $953.33, and because he exceeded his authority, the sale was void. In *Bremer* v. *Hadley,* 196 Mass. 217, no power was given to sell any part of the trust property or to reinvest the fund.

The mortgage and legacies aggregated $25,000, and while real estate property appraised at $30,000 was put up for sale, only $10,000 worth was sold. It was not required that these facts should all appear of record, nor did the executors, in proceeding as they did, exceed the authority conferred upon them. *McLaughlin* v. *Greene, supra.*

In the deed the executors used the words "remise, release, and forever quitclaim." They did not use the word "grant."

Although the instrument was made before St. 1912, c. 502, it was sufficient in form. It was unnecessary to employ this particular word. *Wainwright* v. *Sawyer*, 150 Mass. 168. *Ladd* v. *Chase*, 155 Mass. 417, 422.

The deed which was offered referred to the premises as "Lot 27 as shown on a plan. . . . recorded with Middlesex South District Deeds," followed by a detailed description; while the same lot on the plan used at the trial is Lot No. 18. The plaintiff did not object to the deed on the ground of any alleged mistake in the number of the lot. He based his objections on other grounds. As the judge found, "The parties seemed to agree at the hearing that the error would have been immediately rectified if the deed had been satisfactory in other respects," and the plaintiff expressly "withdrew any charge of fraud in numbering the lots." The plaintiff cannot now be heard to complain that there was a mistake in the number of the lot in the deed if, indeed, on the whole record there was any mistake.

The plaintiff was guilty of laches and the judge was clearly right in so finding. Three years lapsed after the purchase before the plaintiff made any effort to secure a deed. He made no offer to pay the remainder of the purchase price and he did not proceed within a reasonable time to protect his rights. See *Mansfield* v. *Wiles*, 221 Mass. 75, 83. His occupation of the premises, as shown by the evidence, without the knowledge of the executors, was no excuse for this delay.

*Decree of the Superior Court affirmed with costs.*