PETER ONANIAN vs. JOHN E. LEGGAT.

Middlesex.   March 21, 1974. — October 23, 1974.

Present: HALE, C.J., ROSE, KEVILLE, GOODMAN, GRANT, & ARMSTRONG, JJ.

*Contract,* Performance and breach, Condition precedent, For sale of
   real estate.  *Executor and Administrator,* Contracts, License to sell
   real estate, Personal liability.

The obligation of an executor, acting under a power of sale conferred
   by a decedent's will, to obtain the highest price in selling land of
   the decedent does not excuse his performance of a purchase and
   sale agreement entered into by him, as executor, so that he may
   accept a higher offer. [625-628]
Absent an agreement to the contrary, an executor was personally
   liable for damages for breach of a contract for the sale of land,
   drafted by him, even though the contract described him as execu-
   tor and he mistakenly believed that it freed him from liability.
   [628-631]
A condition of an agreement by an executor for the purchase and sale
   of certain land, making performance contingent upon the execu-
   tor's obtaining a license to sell from the Probate Court, was ful-
   filled by the issuance of a decree giving the executor the power to
   sell the land at the price stipulated in the purchase and sale agree-
   ment or "at private sale . . . for a larger sum" or "at public
   auction." [630]

BILL IN EQUITY filed in the Superior Court on Decem-
ber 31, 1970.

The suit was heard by *Mason,* J.

*Robert F. Murphy, Jr. (John E. Leggat* with him) for
the defendant.

*Benjamin Goldman* for the plaintiff.

ROSE, J.   The defendant appeals from a decree of the
Superior Court in which the plaintiff was declared

entitled to the payment of a sum of money, with interest, in lieu of specific performance of an agreement for the purchase of certain real property from the defendant. Since we have before us the judge's findings of fact and a transcript of the evidence heard by him, all questions of law, fact and discretion are open for our decision, and we can and do find facts not expressly found by the judge. *Juergens* v. *Venture Capital Corp.* 1 Mass. App. Ct. 274 (1973).

On July 17, 1970, the defendant qualified as executor under the will of one L. Francis F. Knowles. The will devised the decedent's real property to certain persons, but conferred a power of sale thereof upon the defendant as executor. The defendant received at least two offers to purchase the real property, one of which was from the plaintiff. During the last week of November, 1970, the plaintiff and the defendant executed an agreement for the purchase and sale of the property (the agreement) for $32,500, title to pass on or before January 1, 1971. The agreement was in typical form, but contained the following provision: "This conveyance is subject to and contingent upon the issuance of a license to sell from the Probate Court for Middlesex County in the Estate of L. Francis F. Knowles."

On December 3, 1970, the defendant filed a petition in the Probate Court for Middlesex county in which he represented that "an advantageous offer for the purchase of said real estate ha[d] been made to [him] in the sum of [$32,500]" and prayed that he "may be licensed to sell said real estate . . . at private sale in accordance with said offer or for a larger sum . . .." The defendant also filed documents signed by each of the devisees assenting to the "petition for license to sell real estate for the sum of $32,500 without further notice to me." On December 15 a judge of the Probate Court entered a decree to the effect that the defendant be licensed to sell the property "at private sale in accordance with said offer or for a

larger sum, or at public auction, if he shall think best so to do . . .."

By a letter dated December 29, 1970, the defendant informed the plaintiff that the license had been obtained. In the same letter, however, the defendant stated that another prospective purchaser was interested in the property and that it would be sold to the highest bidder on January 4, 1971. The plaintiff filed his bill in equity on December 31, 1970, seeking specific performance of the agreement and other relief, but, without waiving his rights under the agreement, submitted a bid to the defendant in the amount of $35,155, and obtained title to the property for that price during the pendency of this suit. The decree appealed from declared the defendant indebted to the plaintiff for the difference between that price and the contract price of $32,500, with interest from December 31, 1970.

We are uncertain whether the thrust of the defendant's argument is that his agreement with the plaintiff was not binding upon him or that a condition to which his obligation thereunder was subject was not fulfilled. Under either interpretation the argument is without merit.

1. Under the first of these interpretations, the defendant is contending that because he was under a duty to obtain the highest possible price for the property, he was excused from performing the agreement when a higher offer than the plaintiff's was received. The first of these propositions is unquestionably true, Newhall, Settlement of Estates (4th ed.) § 120. But the second proposition does not inevitably follow from it. The fiduciary duty of an executor or administrator is separate and distinct from the contractual duty he may incur when he enters into agreements with third persons. The first is owed to and enforceable by the beneficiaries of the estate, while the second is owed to and enforceable by a stranger to the estate. And, with a few exceptions not here material (see *Wilder Grain Co.* v. *Felker,* 296 Mass. 177 [1936], and cases cited), an executor or administrator

is liable on contracts he makes for the benefit of the estate, if at all, individually and not in his representative capacity. *Luscomb* v. *Ballard,* 5 Gray 403, 405 (1855). *Dresel* v. *Jordan,* 104 Mass. 407, 413-414 (1870). *Kingman* v. *Soule,* 132 Mass. 285, 288 (1882). *Tomlinson* v. *Flanagan,* 287 Mass. 38, 44-45 (1934). *Grueby* v. *Chase Harris Forbes Corp.* 292 Mass. 156, 159 (1935). *Anglo-American Direct Tea Trading Co.* v. *Seward,* 294 Mass. 349, 351 (1936). *Marsh* v. *Drowne,* 1 Mass. App. Ct. 777, 780, n. 5 (1974). Thus, the two types of duties are enforceable *by* different persons and, in the eyes of the law, *against* different persons. See *Eaton* v. *Walker,* 244 Mass. 23, 30-32 (1923). The executor or administrator, of course, is entitled to reimbursement for expenses reasonably and necessarily incurred for the benefit of the estate. *Tomlinson* v. *Flanagan, supra,* at 45. But whether he can obtain such reimbursement is a question to be answered by the Probate Court in the settlement of his account, a separate proceeding which is not before us (*Luscomb* v. *Ballard, supra*), and as to which we make no comment (*O'Brien* v. *Dwight,* 363 Mass. 256, 292 [1973]).

That the contracts of an executor or administrator are enforceable in an action at law, however improvident they may be from the standpoint of the estate, is well settled by the cases cited in the preceding paragraph. It has been said that personal liability attaches even where the fiduciary entering into such a contract lacks authority to perform it in accordance with its terms. *Dresel* v. *Jordan,* 104 Mass. 407, 414 (1870). Additionally, where he has authority to sell a decedent's real property (contrast *Dresel* v. *Jordan, supra* [1]), has entered

---

[1] The reason that the contract in the *Dresel* case could not have been specifically enforced against the executors was that they had no power under the will to sell the real estate and the Probate Court at that time had no power to grant an executor a license to sell real estate other than at public auction. *Hunt* v. *Frost,* 4 Cush. 54, 59-60 (1849). The statute under which the latter case was decided

into a contract to do so (compare *Weinstein* v. *Green,* 347 Mass. 580 [1964]) and his obligation thereunder has become unconditional (contrast *Grennan* v. *Pierce,* 229 Mass. 292, 293-294 [1918]), the contract may well be specifically enforceable against him. See *Justice* v. *Soderlund,* 225 Mass. 320, 322-324 (1916); *O'Neill* v. *Niccolls,* 324 Mass. 382, 384-385 (1949). We need not decide whether the plaintiff could have obtained a decree ordering the defendant to convey the property, however, as no such decree was necessary. Having already acquired title to the property, the plaintiff received by the decree what amounts to nothing more than money damages in the nature of a refund of the excess of the price he paid over the price stipulated in the agreement — which he could just as well have recovered in an action at law.

It has been suggested that an executor or administrator can escape such personal liability to third persons by an agreement exempting himself therefrom. *Anglo-American Direct Tea Trading Co.* v. *Seward,* 294 Mass. 349, 351 (1936). *Reilly* v. *Whiting,* 332 Mass. 745, 746-747 (1955). But the agreement in the present case contains no provision purporting to grant such an exemption. The fact that the defendant is identified in the opening clause of the agreement as "Executor u/w/o/ L. Francis F. Knowles" and that his signature is followed by the abbreviation "Execr." is insufficient to protect him against personal liability. *Reilly* v. *Whiting, supra. Marsh* v. *Drowne,* 1 Mass. App. Ct. 777, 780 (1974). Nor is it of any consequence that the defendant may have understood the agreement as affording him such protection, especially where, as here, he was its draftsman. No such mistake of law on the defendant's part can free him

---

(Rev. Sts. c. 71, § 17) was carried over in substantially the same form by Gen. Sts. c. 102, § 17, and Pub. Sts. c. 134, § 11. The Probate Courts were first authorized to grant licenses to executors and administrators to sell real property at private sales by St. 1886, c. 137, § 1, and that authorization exists today under G. L. c. 202, §§ 14, 19.

from liability. *Scirpo* v. *McMillan,* 355 Mass. 657, 660 (1969). Rather, his liability is governed by "[t]he general rule . . . that . . . one who signs a written agreement is bound by its terms whether he reads and understands it or not . . .." *Spritz* v. *Lishner,* 355 Mass. 162, 164 (1969).

2. If the defendant's argument is interpreted as one that his obligation under the agreement was conditional upon his not receiving a higher offer for the property, it must also fail. There was no evidence of any antecedent understanding between the parties in this regard. There was nothing in the agreement itself expressly relieving the defendant of liability upon receipt of a higher offer. The defendant seems to argue, however, that the provision making his obligation conditional upon obtaining a license from the Probate Court impliedly had this effect.

Though no such license is required by law where an executor has power under the will to sell real estate (*Reilly* v. *Whiting,* 332 Mass. 745, 747 [1955], and cases cited; contrast *Roper* v. *Murphy,* 317 Mass. 176, 178 [1944]; *Russo* v. *Inzirillo,* 360 Mass. 862 [1971]), fiduciaries having that power commonly obtain such a license (Newhall, Settlement of Estates [4th ed.] § 113, n. 14), and an agreement which is conditional upon the procurement of a license will not be enforced unless and until the license has been obtained irrespective of the executor's powers under the will (*Grennan* v. *Pierce,* 229 Mass. 292, 293-294 [1918]; cf. *Forester* v. *O'Connell & Lee Mfg. Co.* 328 Mass. 377, 380 [1952]). In the present case the agreement provides only that the conveyance of the property is contingent upon "the issuance of a license to sell", without mention of any price, but we conclude, on the basis of an examination of the agreement in its entirety (*Johnson* v. *Worcester Business Dev. Corp.* 1 Mass. App. Ct. 527, 529 [1973]) as a "rational business instrument" (*Lembo* v. *Waters,* 1 Mass. App. Ct. 227, 231 [1973]), that the license was intended

to be one permitting the defendant to sell the property for the stipulated contract price of $32,500.

The question, then, is whether the license issued to the defendant satisfied the condition in the agreement. We are of the opinion that it did. The decree of the Probate Court gave the defendant three alternatives: (1) to sell the property "at private sale in accordance with said offer" (i.e., for $32,500), or (2) to sell it "at private sale . . . for a larger sum" or (3) to sell it "at public auction". It has been suggested that the second of these alternatives, should the defendant have the opportunity to avail himself of it, had the effect of nullifying the first. The disjunctive phraseology of the decree, of course, tends to refute that interpretation. More important, such an interpretation suffers from the fallacy of confusing the defendant's *power* (see Restatement: Property § 3) under the license with his *duty* (see Restatement: Property § 1, comment a) to the estate in exercising that power. While he had a duty to the estate to get the best possible price for the property, he had the power to sell it at the minimum figure stated in the decree unless someone stopped him from doing so in an appropriate proceeding in the Probate Court. *Thornton* v. *McWalter,* 329 Mass. 768 (1953). Lest it be thought that our interpretation would render meaningless the words "or for a larger sum" in the decree, we call attention to the fact that the petition filed by the defendant in the Probate Court represented only that "an advantageous *offer* for the purchase of said real estate ha[d] been made" (emphasis supplied), and that the probate judge found only "that said *offer* is an advantageous one and that the interest of all parties will be best promoted by an acceptance of said *offer*" (emphasis supplied). There is nothing in the petition or decree, or elsewhere in the record of the present case, to indicate that either the probate judge or the devisees under the will were even made aware that the defendant had already accepted the plaintiff's offer and executed a purchase and sale agreement pursuant

thereto.    Because of the fundamental rule that an unaccepted offer may be withdrawn or rejected at any time before acceptance (see, e.g., *Sylvester* v. *Newton,* 321 Mass. 416 [1947]; *Weinstein* v. *Green,* 347 Mass. 580 [1964]), it is our opinion that the clear purpose of the words "or for a larger sum" was to permit the defendant to accept a higher offer if one was received by him before he had accepted the lower one.    This would ordinarily be the effect of the words "or for a larger sum" — which, together with the other provisions of the petition and decree quoted in this paragraph, were printed on the form of petition filed by the defendant and the decree entered thereon.    Such a decree obviously contemplates that a fiduciary will "avoid getting himself into a position where he cannot accept a higher offer if one is made."    Newhall, Settlement of Estates (4th ed.) § 113, at 345.

Here, however, the defendant had already accepted the offer described in the petition and decree, and the decree, by authorizing him, among other things, to dispose of the property for the amount of that offer, satisfied the only condition precedent to which the defendant's contractual liability was subject.    Even after signing the agreement and filing the petition in the Probate Court the defendant could have protected himself against such liability.    If the other offer was higher than the $32,500 offered by the plaintiff, the defendant could have called this to the attention of the devisees and the probate judge (and indeed was under a duty to do so), in which case the minimum price named in the decree would doubtless have been at the higher figure, thereby leaving the condition to which his contractual obligation was subject unsatisfied.    *Grennan* v. *Pierce,* 229 Mass. 292, 293-294 (1918).    If the other offer was the same or less than the plaintiff's, the defendant could have obtained a continuance of the probate proceeding pending further negotiations with the two prospective purchasers, perhaps including an informal

auction between them (see Newhall, Settlement of Estates [4th ed.] § 120), or could even have brought them before the probate judge (see *Weathers* v. *Jarvis,* 294 Mass. 227 [1936]). Once the probate decree had been entered the defendant might still have been able to escape liability by seeking its amendment or revocation. See *Thornton* v. *McWalter,* 329 Mass. 768 (1953). So far as the record discloses, however, the defendant did none of these things. He must therefore be held liable on his agreement.

3. We note that the defendant is characterized in the pleadings and the decree of the Superior Court as "executor". For the reasons previously stated he is properly before the Superior Court only as an individual, and we treat the bill as having been brought against him in that capacity, the word "executor" being surplusage. See Newhall, Settlement of Estates (4th ed.) § 254. Since the identification of the defendant in the decree ("as he is the Executor of the Will of L. Francis F. Knowles") might be susceptible of misinterpretation, the decree is to be modified by striking the quoted words therefrom.

This opinion represents the view of a majority of the court. See Rule 1:18 of the Appeals Court, 1 Mass. App. Ct. 892 (1972).

The decree as modified is affirmed.

*So ordered.*