Helen E. CHURCHILL, Plaintiff
vs.
Jean SULLIVAN McKEAGUE, et als, as they constitute the School Committee of the City of Boston, Defendants

No. 56255

Superior Court/Suffolk, ss.
Commonwealth of Massachusetts

October 20, 1982

**James T. Grady,** counsel for plaintiff
**H. Charles Hambelton, Michael J. Betcher (Asst. Corp. Counsel),** counsels for defendant

## MEMORANDUM OF DECISION RE: FINDINGS OF FACTS, RULINGS OF LAW, AND ORDER

### I. Introduction

This is an action commenced on July 28, 1982 by the plaintiff, a teacher employed by the Boston Public Schools since 1962, seeking a declaration that her employment was not terminated as a result of her submitting an application for Employment Termination Incentive (ETI) as set forth in the Deputy Superintendent's Memorandum No. 97, 1981-82, dated February 24, 1982 and marked as Joint Exhibit #2.

Specifically, the plaintiff alleges that she did not resign her teaching position on April 8, 1982, to be effective on June 30, 1982, when she signed and submitted her application for ETI to the defendants' Department of Personnel Management.

The defendants had offered an ETI plan to all tenured teachers or permanently employed nurses who would have completed ten (10) years of service at the conclusion of the 1981-1982 school year. A one-time payment of 25% of regular base salary constituted the incentive payment (Joint Exhibit #2).

There is no allegation that the plaintiff submitted her application in reliance upon any misrepresentation of material facts by the defendants or that she lacked the mental capacity to understand the nature and consequences of her actions.

It was also stipulated and agreed to by the parties through counsel at trial that the defendants did not rely to their detriment on the plaintiff's submission of her application for ETI prior to her attempted withdrawal of said application. The plaintiff seeks a declaration that the defendants' refusal to employ her for the 1982-83 school year constituted a dismissal in violation of G.L. c. 71, sec. 42 and that she be reinstated and otherwise compensated for any loss of salary as provided for by G.L. c. 71, sec. 43A.

### II. Findings of Facts

After a hearing on the merits which commenced on August 16, 1982, including the testimony of the plaintiff, Ida White, as she is the Director of the Department of Personnel Management of the Boston School Committee, William Abbott, an Administrative Assistant in the office of Deputy Superintendent Rosemarie Rosen, and Nancy Dickerson, a labor relations specialist in the Department of Personnel Management, and a careful review and examination of submitted affidavits and the exhibits, **i.e.,** Joint Exhibits #1-5, Plaintiff's Exhibits #1 and 2 and Defendants' Exhibits #1, 2 and 3. I find the following relevant and material facts.

1. The plaintiff, Helen E. Churchill, is an individual residing at 85 India Wharf, Boston, Suffolk County, Massachusetts.

2. The defendants, Jean Sullivan-McKeague, John D. O'Bryant, Kevin McCluskey, Jean McGuire and Rita Walsh-Tomasini together constitute the School Committee of the City of Boston.

3. The plaintiff holds a valid general teaching certificate issued by the Department of Education of the Commonwealth of Massachusetts that authorizes her to teach, **inter alia,** all subjects presently offered in the Boston Public Schools except Special Education and Guidance. (Joint Ex. 1).

4. On or about September 1, 1962, the plaintiff became employed by the defendants as a teacher of English as a Second Language ("ESL") for adults at the Day School for Immigrants in Boston, Massachusetts, the name of which was changed to the "English Language Center" in September 1976.

5. The plaintiff served as an ESL teacher at the English Language Center on a full-time, regular and continuous

basis until on or about June 30, 1981 when the Center was permanently closed.

6. The plaintiff served as an ESL teacher in the Chinese Bilingual Program at Charlestown High School during the 1981-82 school year.

7. At all times material herein the plaintiff was a teacher serving at discretion (i.e., with tenure) within the meaning of G.L. c. 71, sec. 41.

8. On or about March 1, 1982, the defendants posted Deputy Superintendent's Memorandum No. 97, 1981-82 dated February 24, 1982 and entitled Employment Termination Incentive (Joint Exhibit #2). Said Memorandum contained, **inter alia,** an offering to all teachers otherwise eligible to apply for voluntary early termination incentive benefits in exchange for their resignations which were not otherwise required by law or contract.

9. Deputy Superintendent's Memorandum No. 97, 1981-82, dated February 24, 1982 and entitled Employment Termination Incentive (Joint Exhibit #2), contained the following pertinent specific language:

III. The ETI payment will be made no later than August 31, 1982.

IV. A separation agreement between the committee and each employee volunteering for ETI will specify the amount of severance pay, **if any,** to which the employee is entitled. **The School Department reserves the right to defer severance pay until August 31, 1982.** (emphasis supplied).

VI. The application period will be effective on posting of the offer and will expire on Thursday, April 8, 1982.

VII. The School Committee reserves the right to limit the number of ETI's to 250. If the number of applicants exceeds the 250 limit, **applicants will be selected in order of priority. . . . .** (emphasis supplied).

X. Submission of the signed application is binding on the applicant, cannot be withdrawn **and is subject to acceptance or rejection by the School Committee.** (emphasis supplied).

10. Attached to Deputy Superintendent's Memorandum No. 97 (Joint Exhibit #2) was a sample application form which teachers electing to participate in the ETI program could submit to the Department of Personnel Management and contained the identical language that appeared in Paragraph X of the Memorandum (Joint Exhibit #2) as well as the following additional statements:

1. **Successful applicants** will be contacted by the office of Personnel Management regarding the execution of the Separation Agreement. (emphasis supplied).

2. This application **must be submitted** by Thursday, April 8, 1982. (emphasis supplied).

11. On or about March 1, 1982, the plaintiff read Joint Exhibit #2 at Charlestown High School and subsequently requested and did receive from the Department of Personnel Management an Application for Employment Termination Incentive (ETI).

12. Upon receipt of the application for ETI, and prior to April 8, 1982, the plaintiff discussed with friends and with Mr. Welch of the Boston Teachers Union, whether or not she should submit an application under the ETI program.

13. Prior to April 8, 1982, the plaintiff solicited the advice of various individuals both within and without the Boston School Department to help her reach a decision and attended sessions at a Stress Clinic sponsored by the Health and Welfare Division of the Boston Teachers Union at Tufts New England Medical Center, an out-patient facility dealing with teacher stress.

14. On April 8, 1982, the plaintiff spoke to a Ms. Williams, a counsellor at the Stress Clinic, who advised her not to

applyunder the ETI program.

15. Still undecided as to whether she should submit an application under the ETI program, the plaintiff returned to her apartment at 85 India Wharf, Boston, knowing that the deadline for the submission of her application was at 5:00 P.M. on April 8, 1982.

16. On April 8, 1982, the plaintiff presented herself at 4:00 P.M. at the Department of Personnel Management, 26 Court Street, Boston, and at approximately 4:40 P.M., ripped up the unsigned application in the presence of a Ms. McDonough, the receptionist in the Personnel Office.

17. On April 8, 1982, at approximately 4:45 P.M. the plaintiff requested and received another application from Ms. McDonough which she completed and signed. It was time stamped at 4:51 P.M. (Joint Exhibit #3).

18. Nancy Dickerson, a labor relations specialist in the Department of Personnel Management, processed the ETI applications and her principal role was to reject those applications submitted that did not meet the eligibility requirements as set forth in Deputy Superintendent's Memorandum No. 97 (Joint Exhibit #2). She made no determination as to whether or not the plaintiff was a tenured teacher but only as to whether the plaintiff would have completed ten (10) years of service at the conclusion of the 1981-82 school year. Of the approximate 200 ETI applications reviewed by her, she determined that ten (10) were ineligible and subsequently submitted to Ida White, Director of the Department of Personnel Management, on April 15, 1982, a list of those applicants determined by her to be eligible for ETI benefits.

19. Nancy Dickerson also had the responsibility of obtaining additional information to determine the sum equalling 25% of each eligible applicant's regular base pay salary as well as an additional amount, if any, of severance pay based on sick leave taken or accrued through March 1, 1982 to which an eligible applicant would be otherwise entitled under the collective bargaining agreement (See II of Joint Exhibit #2).

20. Upon determining the total amount to be paid as ETI benefits to eligible applicants, a Memorandum dated May 10, 1982 with three (3) copies of a Separation Agreement under the ETI plan was mailed to the eligible applicants (Joint Exhibit #5) with instructions to return two (2) signed copies to Nancy Dickerson no later than May 28, 1982.

21. On or about April 18, 1982, prior to receiving the Memorandum dated May 10, 1982 with three (3) copies of a Separation Agreement, and prior to receiving any other notice from the defendants that her application was accepted or rejected (see X of Joint Exhibit #2) the plaintiff spoke by telephone to William Abbott, an administrative assistant in the office of Deputy Superintendent Rosemarie Rosen, informing him that she wanted to revoke her application for ETI benefits. Mr. Abbott advised her to reduce her request in writing (Joint Exhibit #4), which letter was hand-delivered to Mr. Abbott on April 21, 1982 at which time Mr. Abbott told the plaintiff to see him in one week.

22. On or about April 26, 1982, prior to meeting with Mr. Abbott on May 7, 1982, the plaintiff submitted to the defendants a written request to be transferred to a teaching assignment for the 1982-83 school year different from the one she held at Charlestown High School during the 1981-82 school year (Plaintiff's Exhibit #2).

23. On April 26, 1982, Mr. Abbott forwarded the plaintiff's letter dated April 21, 1982 (Joint Exhibit #4) to Ida White, asking that she advise him of her position on the plaintiff's request (Defendant's Exhibit #2).

24. Ida White referred the matter to John M. Conley who on April 27, 1982 responded in a memorandum to Ida White that

> "If we are to hold the line, **all** requests to rescind ETI's **must be** denied." (Defendant's Exhibit #3; emphasis original).

Ida White endorsed on Conley's memorandum "I agree" which was subsequently endorsed by Rosemarie Rosen with the words "Unfortunately, I agree". (Defendants' Exhibit #3).

25. On May 7, 1982, the plaintiff met again with Mr. Abbott, who informed her of Ida White's decision and its concurrence by Deputy Superintendent Rosemarie Rosen. At this meeting the plaintiff was told by Mr. Abbott that had more than 250 teachers applied for ETI benefits they would have probably permitted her to withdraw her application, but since there were only 193 eligible ETI applicants, her request to rescind or otherwise withdraw her application would have to be denied.

26. On May 12, 1982 the plaintiff was mailed a Memorandum dated May 10, 1982 with three (3) copies of the Separation Agreement under the ETI plan (Joint Exhibit #5) with instructions to return two (2) signed copies no later than May 28, 1982,

27. A few days prior to May 25, 1982, Ida White was requested by Edward Doherty, Vice-President of the Boston Teachers Union, acting on behalf of the plaintiff, to meet with her and to discuss with the plaintiff why her request to withdraw her ETI application had been denied.

28. On May 25, 1982, the plaintiff had a meeting with Ida White, Director of the Department of Personnel Management of the Boston School Committee, and the designated administrator of the ETI program. At this meeting, the plaintiff told Ida White of the extreme stress she was under on April 8, 1982 and the circumstances attendant to submitting of her ETI application between 4:00 and 4:51 P.M. at the Personnel Department of the Boston School Department, that she had exercised bad judgment in submitting her ETI application on April 8, 1982 and had received incorrect information from employees in the Department of Personnel Management concerning E.S.L. teaching vacancies in the Adult Basic Education program for the 1982-83

school year. Mrs. White told the plaintiff that had she requested a withdrawal of her ETI application on Monday, April 12, 1982 (April 9th was Good Friday) it would have been allowed, but since she was the only ETI applicant to request withdrawal after April 8, 1982, her request would have to be denied.

29. On May 27, 1982, the plaintiff by letter of counsel (Plaintiff's Exhibit #1) notified the defendants that she would not execute the Separation Agreement or otherwise accept the terms of the ETI plan.

30. The plaintiff did not sign the Separation Agreement attached to the May 10, 1982 Memorandum nor was it returned to Nancy Dickerson on or before May 28, 1982. No ETI payment was tendered or received by the plaintiff.

31. On or about July 22, 1982, the plaintiff attended an excess teachers reassignment pool at the defendants' offices, at which time she sought to select a teaching assignment for the 1982-83 school year. She was advised that since she was no longer an employee of the Boston School Department she would not be given a teaching assignment for the 1982-83 school year.

## III. RULINGS OF LAW

Under basic contract law principles, a communication from one party to another, whether it be oral or written, can constitute a legal offer if it creates in the offeree the power to conclude a contract simply by doing the act or making the promise called for in the communication, or in other words, by accepting. Further, if the communication is **specific** as to consideration, manner of acceptance, period offer is open, and time of acceptance, it will be held to be an offer.

Therefore at issue is whether the Deputy Superintendent's Memorandum No. 97, dated February 24, 1982 (Joint Exhibit #2) constituted a legal offer which was accepted by the plaintiff on April 8, 1982 upon the filing of her application or whether the said Memorandum No. 97 was an invitation to the plaintiff to make

an offer which was not accepted or rejected by the defendant offerors prior to it being withdrawn by the plaintiff, offeree.

**Sylvester v. Newton,** 321 Mass. 416 (1947)

**Weinstein v. Green,** 347 Mass. 580 (1964)

**Onanian v. Leggat,** 2 Mass. App. Ct. 623, at 630 (1974).

A careful reading of the Deputy Superintendent's Memorandum No. 97, dated February 24, 1982, entitled "Employment Termination Incentive", which was posted on or about March 1, 1982 on the teacher's bulletin board in the office of the Headmaster at Charlestown High School and admittedly read by the plaintiff on that day, supports the court's finding that construing the Memorandum (Joint Exhibit #2) as a whole, it was an invitation to submit an application from tenured teachers with ten (10) years of service on June 30, 1982 who are desirous of participating in an Early Termination Incentive plan in exchange for certain severance benefits for their resignations not otherwise required by law or contract. The posted Memorandum (Joint Exhibit #2) is directed to Community Superintendents, Headmasters, Principals and Other Administrative Heads. It sets forth certain conditions in its offering of an Employment Termination Incentive (ETI). Section II refers to Article II J of the collective bargaining agreement wherein a one-time incentive payment of 25% of a teacher's regular base salary plus career awards, H H HORC and SPED payments, but excluding coaching, evening or summer school, shall be in addition to severance pay to which a **teacher may be entitled.** (emphasis supplied). Although Paragraph III states that the ETI payment will be made no later than August 31, 1982, the right to defer severance pay until August 31, 1983. Also Paragraph IV refers to a Separation Agreement between the School Committee and each employee **volunteering** for ETI specifying the amount of severance pay, **if any,** to which

the employee is entitled. (See Joint Exhibit #5). Although Paragraph VI states that "the application period will be effective on posting of the offer and will expire on Thursday, April 8, 1982," Paragraph VII reserves the right to the School Committee to limit the number of applicants to 250 stating further that "if the number of applicants exceeds the 250 limit, applicants will be selected in order of seniority."

Paragraph X states that the signed application is subject to acceptance or rejection by the School Committee.

The defendants admit in their proposed findings of fact and conclusions of law filed pursuant to Mass. R. Civ. P. 52(a) that if the application was filed on or before April 8, 1982, two conditions subsequent could occur which would otherwise terminate the contract assuming that a binding contract existed on the filing of the plaintiff's application, namely (1) if the plaintiff was ineligible for ETI benefits and (2) if the number of applicants exceeded the 250 limit.

An offer necessarily looks to the future. It is an expression by the offeror of his agreement that something on which he at least assumes to have control shall be done or happen or shall not be done or happen if the conditions stated in the offer are complied with. Unless the statement gives the person to whom it is addressed any assurance that, on some contingency at least, he shall have something, the statement is not an offer. **Williston on Contracts Sec. 24A**

The plaintiff argues and the court so finds that the Memorandum (Joint Exhibit #2) did not constitute an offer but a request or invitation to determine her eligibility for the ETI plan by calculating the extent of the total benefits to which she would be entitled, if found eligible, and to offer her that amount in the form of a Separation Agreement (Joint Exhibit #5). This argument is supported by the terms of the Memorandum itself wherein it states in Paragraph X that the submission of the signed application is subject to acceptance or rejection by the

School Committee. The plaintiff further contends and the Court so finds that the "offer" to participate in the ETI plan was the Separation Agreement which was made to her on May 12, 1982 with the accompanying Memorandum dated May 10, 1982 (Joint Exhibit #5), which she did not sign or otherwise accept having previously notified the defendants, at least as early as April 18, 1982 of her intention to withdraw her application.

It is well-settled that an offer is a communication that gives the recipient thereof the power to conclude a contract by accepting. **See, e.g., Gill v. Richmond Co-op Assn.,** 309 Mass. 73 (1941). The rule follows that a request for proposals or an indicated willingness to receive proposals is not an offer that can ripen into a contract upon submission of a proposal, since any or all such responses may be rejected. **See Air Technology Corp. v. General Electric Co.,** 347 Mass. 613 (1964) and **Cronin v. National Shawmut Bank,** 306 Mass. 202 (1940). The Deputy Superintendent's Memorandum (Joint Exhibit #2) did not constitute an offer since the mere filing of the application would not necessarily bind the applicant. Indeed, by its own, express terms, the Memorandum suggests that very fact.

Paragraph X of the Memorandum states that "Submission of the signed application is binding on the applicant, cannot be withdrawn and **is subject to acceptance or rejection by the School Committee.**" (emphasis supplied). Thus, filing of an application might not result in the applicant being accepted into the ETI program, even assuming he or she had that intent or understanding at the time the application was filed. Further, the broad language cited above suggests that the School Committee reserved virtually unlimited discretion in deciding to accept or reject applications, thereby rendering it impossible for an applicant to determine whether the filing of an application would ensure participation in the ETI program.

The defendants argue that the instances in which an applicant would not be accepted in the ETI program are specified in the Memorandum and therefore are capable of ascertainment at the time of the filing of the application.

In that regard Paragraph I of Joint Exhibit #2 sets forth certain eligibility criteria,[1] based upon the number of years of service of the applicant. Paragraph VII provides that the School Committee reserves the right to limit the number of participants to 250, and will select applicants by seniority in the event that the number of applications is in excess of that figure. However, although an applicant could ascertain his eligibility based upon years of service, no applicant could know at the time of submission whether the number of applications would exceed 250 and if so, whether his seniority would place him within the selected group. Thus, no applicant had the power to bind the School Committee upon submission of his application and consequently no agreement could have been effected at that point.

The plaintiff further contends and the court so finds that the Memorandum and acceptance form read together do not constitute a binding agreement since the terms of the purported offer contained in the Memorandum are not set forth therein with the requisite specificity. See, **Caggiano v. Marchegiano,** 327 Mass. 574, 579 (1951). Thus, although the Memorandum outlined the types of benefits that would constitute the ETI, it did not contain the specific amounts to be

---

[1] A. Any tenured teacher or permanently employed nurse who will have completed ten (10) years of service at the conclusion of the 1981-82 school year may apply for the voluntary early termination incentive.

B. Furthermore, the following teachers shall be eligible for ETI:

1. Teachers presently on paid leave of absence who would have completed ten (10) years of service at the conclusion of the 1981-82 year;

2. Teachers presently on unpaid leave of absence who have completed ten (10) years of service as of June, 1981'

3. Teachers currently on layoff who are to be recalled as the result of the Pinkus Arbitration.

(Joint Ex. 2)

paid to the individual applicant. Indeed, an applicant's understanding of what his entitlement would be could be quite different from the amount eventually calculated in the Separation Agreement by the defendants. In that instance, if the defendants' position is accepted, an applicant would be forced to bind himself to an agreement without being cognizant of the specific terms thereof, and without having an opportunity to contest or dispute the amount of benefits offered to him. Such a result would be highly unfair and leads the court to conclude that an applicant could not reasonably be found to have entered into an agreement that placed him in such a position. Accordingly, the court views this purported contract as no more than an agreement to agree in the future on essential terms, and as such is deemed to be unenforceable. See **Air Technology Corp. v. General Electric Co.,** 347 Mass. 613, 626 (1964).

The court finds that the Memorandum and Separation Agrement (Joint Exhibit #5) mailed to the plaintiff on May 12, 1982 after her eligibility had been determined constituted the "offer" to participate in the ETI program. The Separation Agreement contained the requisite specifity of the terms of the proposed contract by setting forth the actual amount of benefits to be paid to the plaintiff upon her signing the Separation Agreement. Furthermore, the Separation Agreement was signed by the President of the School Committee and contained a space for the plaintiff employee's signature. The evidence is undisputed that the plaintiff did not sign the Separation Agreement or return it to the defendants on or before May 28, 1982. This is consistent with the earlier revocation of her application and her notification to the defendants that she did not desire to terminate her employment as a teacher in the Boston Public School System.

## ORDER

Therefore based on the foregoing findings of facts and rulings of law, the court declares that:

(1) The plaintiff's employment was not terminated as a result of her submitting an application for Employment Termination Incentive benefits on April 8, 1982.

(2) The defendants' refusal to employ the plaintiff for the 1982-83 school year constituted a dismissal in violation of G.L. c. 71, sec. 42; and that

(3) The plaintiff be reinstated to her position as an English teacher in the Boston Public Schools for the 1982-83 school year without loss of compensation as provided for by G.L. c. 71, sec. 43A.

**Herbert Abrams**
**Justice of the Superior Court**

