Greco, J.
This is a Dist./Mun. Cts. R. A. D. A, Rule 8C, appeal of the entry of summary judgment in favor of the defendant on the plaintiff-attorney’s complaint to recover legal fees.
Plaintiff Diana Butt Campbell (“Campbell”) alleged that she was hired by defendant Nancy C. Toner (‘Toner”) to provide legal services to Toner in conjunction with the probate of the estate of Toner’s aunt. Toner, who had been appointed executrix of that estate, signed a Retainer Agreement in which she, in her individual capacity, agreed to pay Campbell for Campbell’s “time and services extended on [Toner’s] behalf.” Campbell filed this action to recover in excess of $24,000.00 from Campbell. Toner sought summary judgment on the ground that the “action [was] barred by the doctrine of issue preclusion.” In addition to allowing Toner’s Mass. R. Civ. P., Rule 56, motion, the trial court awarded her attorney’s fees in the amount of $3,306.00.
One would think that in a fee dispute, at least what was billed and what was paid would be fairly clear. In this case, however, all that can be gleaned from the record is that the difference between the amount Campbell billed Toner and the amount she has already received directly from the Probate Court is approximately $24,000.00. In her answer in this case, Toner neither admitted, nor denied, that the services for which she was billed were performed. Instead, in moving for summary judgment, Toner took the position that she did not owe Campbell the unpaid balance of her bill because the Probate Court concluded that any amount in excess of its award was not justified. Thus to resolve the question of whether the doctrine of issue preclusion is applicable herein, the exact nature of the Probate Court proceedings must be examined.
The probate of the will of Toner’s aunt was before the Essex County Probate Court. In November of 2000, the Probate Court judge appointed a guardian ad litem to investigate whether there was “an inordinate delay in administering” the estate and whether the fees claimed by Campbell for the work done for Toner were “reasonable and appropriate.” In her subsequent report, the guardian concluded that Toner had “violated her fiduciary duty by unnecessarily prolonging the administration of the estate ... thereby incurring substantially excessive fees and expenses” and that Campbell’s fees were “excessive.”
In April of 2001, the Probate Court judge held a hearing “on the issue of executrix fees, attorney’s fees, costs and expenses with regard to the accounts.” At that hearing, only the guardian ad litem and Campbell appeared and testified. After the guardian’s report was admitted into evidence over Campbell’s objection, the judge gave his “thoughts” on the matter, based on his scanning of some of the materials before him and his review of the guardian’s report. He noted that the estate in question was “relátively simple,” but that Toner “was given virtually no guidance” *18 by Campbell as to Toner’s duties and responsibilities as executrix. The judge further stated that the estate should have been closed out in 1997; that, accordingly, the legal activity after that point should not have occurred; and that as a result of the delay, the beneficiary of Toner’s aunt’s estate did not receive all the proceeds due her while she was alive. Before Campbell was given the opportunity to respond, the judge gave her an option: do nothing until he rendered a “formal decision,” or reimburse the estate for her legal fees reflected in the third and fourth accounts. However, if Campbell chose the first option, the judge indicated he would make his findings and orders, and then report Campbell “to the Board of Bar Overseers for whatever disciplinary action they feel is appropriate.” While reiterating that there had been an “egregious lack of control and oversight” by Campbell and that her fees were “manifestly excessive,” the judge added that he was “not saying that [Campbell] didn’t put the time in that [she] billed for,” but only that “much of the time was absolutely unnecessary.”
In response to the court’s statements, Campbell complained that she could have presented evidence that she had not “left [Toner] to flounder” if she had known that was going to be an issue, and could still do so. The Probate Court judge replied that he had given her “the opportunity to present whatever relevant evidence [she] wanted,” that she had “presented no evidence of that sort,” and that she could “present [the Board of Bar Overseers] with all that information and they can make a decision on what to do with it.” Campbell elected thereafter to exercise the second option, and reimbursed the estate by check in the amount of $14,133.56. This lawsuit by Campbell was filed approximately four months later.
At the hearing on Toner’s summary judgment motion, Toner’s new counsel argued that after a full hearing on the issue of fees in the Probate Court, the judge had made “specific findings” that Campbell was responsible for the “inordinate” delay in the administration of the estate and that the fees sought by Campbell were excessive. In opposition to Toner’s Rule 56 motion, Campbell argued that she did not get a chance to present her evidence in the Probate Court, that she and Toner were in no way adversaries at that hearing, that Toner agreed to pay her the full amount of the fees sought, that the delays in the administration of the estate were due to Toner’s decision to delay the matter in order to prevent a family member from misappropriating the intended beneficiary’s share, and that the Probate Court judge made no formal findings.
Toner’s motion for summary judgment was an appropriate vehicle to determine whether she was entitled to judgment as a matter of law by the application of the doctrine of res judicata. See Miles v. Aetna Casualty & Surety Co., 412 Mass. 424, 426 (1992); Dowd v. Morin, 18 Mass. App. Ct. 786, 789 n.9 (1984). The aspect of that doctrine relevant here is issue preclusion, also known as collateral estoppel. Issue preclusion “does not require mutuality of parties,” but does require “an identity of issues, a finding adverse to the party against whom it is being asserted, and a judgment by a court or tribunal of competent jurisdiction.” Miles v. Aetna Casualty & Surety Co., supra at 427. See also Sonogram of New England, Inc. v. Arnica Ins. Co., 2002 Mass. App. Div. 146, 147. Moreover, the prior judgment must have been not only the product of “an adversary presentation,” but also final. Jarosz v. Palmer, 436 Mass. 526, 531 (2002). “A determination is considered final when ’the parties were fully heard, the judge’s decision is supported by a reasoned opinion, and the earlier opinion was subject to review or was in fact reviewed.’” Id. at 533-534, quoting Tausevich v. Board of Appeals of Stoughton, 402 Mass. 146, 149 (1988).
In the case at bar, the proceedings in the Probate Court did not satisfy the above requirements and, therefore, could not prelude litigation of Campbell’s claim for attorney’s fees in the District Court. While the fees were at stake in both cases, the roles of the courts were very different. The Probate Court judge had to determine whether it was appropriate for Campbell’s fees to be paid directly from *19 the estate, rather than by Toner personally. His was a discretionary call, “as justice and equity may require.” G.L.c. 215, §39B.[1] In making that decision, the judge had to consider the interests of the beneficiaries under the will whose share of the estate would be diminished by the fee award. See Clymer v. Mayo, 393 Mass. 754, 772-773 (1985). Thus any fees in the Probate Court would be awarded “on strictly conservative principles,” a different standard than “that applied in an action by an attorney against a client with whom he has voluntary contractual relations.” Hayden v. Hayden, 326 Mass. 587, 596 (1950). See also Taupa Lithuanian Federal Credit Union v. Bajercius, 1997 Mass. App. Div. 31, 33 n.6. As stated in Onanian v. Leggat, 2 Mass. App. Ct. 623 (1974),
an executor ... is liable on contracts he makes for the benefit of the estate, if at all, individually and not in his representative capacity.... The executor ... is entitled to reimbursement for expenses reasonably and necessarily incurred for the benefit of the estate.... But whether he can obtain such reimbursement is a question to be answered by the Probate Court in the settlement of his account.... That the contracts of an executor... are enforceable in an action at law, however improvident they may be from the standpoint of the estate, is well settled....
Id. at 625-626. Compare also Berke v. Gorgone, 1994 Mass. App. Div. 202, in which this Division stated that “[t]he assessment of reasonable attorney’s fees as a statutory sanction [in a contempt proceeding in the Probate Court] is not the equivalent of a determination of attorney’s fees under an attorney-client fee agreement for services rendered,” id. at 204, and did not, therefore, have any preclusive effect in a District Court action to collect those fees. Thus while the Probate Court judge was solely concerned with whether Campbell’s fees were reasonably and necessarily incurred for the benefit of the estate, the dispositive issues in a trial of this case in the District Court would be whether the services for which Campbell now seeks payment were sought by Toner and were, in fact, performed, irrespective of whether those services benefitted the estate.[2]
Moreover, the judgment in the Probate Court was not rendered after the parties were “fully heard” in an adversary proceeding and was not “supported by a reasoned opinion.” As noted, the only people present at the Probate Court hearing were Campbell and the guardian ad litem, neither of whom was actually a party in the probate matter. Thus, to the extent that any determination was made, it was not the product of a give and take between adverse parties. More importantly, there was no final determination reflected in any opinion, reasoned or otherwise, with respect to attorney’s fees. It is true that the Probate Court judge gave his “thoughts” during the hearing, but he acknowledged that those “thoughts” were based on a “scan[ning]” of some of the material, without “a chance to go over all of the Exhibits.” There is no question that the judge expressed a rather clear view about what he had heard and read, but he never actually made a decision. He gave Campbell an option. If she chose not to reim *20 burse the estate, then he would make findings. However, when she did in fact reimburse the estate, the Probate Court dispute on fees ended and findings were rendered unnecessary. It cannot be merely assumed that any findings would have been consistent with the judge’s interim remarks in court As this Division noted in Stamos v. Jacobsen, 1987 Mass. App. Div. 185, “[sjtatements and observations made from the bench prior to the formal issuance of factual findings do not represent binding determinations of the court The fact finding process itself entails shilling and evolving judicial impressions and assessments.” Id. at 186. See also Sundex, Ltd. v. Antifonario, 1997 Mass. App. Div. 187, 188. Finally, Campbell's decision to reimburse the estate in order to resolve the matter in the Probate Court and avoid a Board of Bar Overseers referral did not preclude her from bringing this action. See Jarosz v. Palmer, supra at 536 (“When the losing party forgoes the right to challenge the ruling because a settlement is in his best interest, it would be unfair to bar the party from relitigating the determination in subsequent proceedings against different parties.”[3])
Accordingly, the allowance of Toner’s motion for summary judgment is reversed, and the judgment and related award of attorney’s fees against plaintiff Campbell are vacated. This matter is returned to the Ipswich Division for trial.
So ordered.

 There is no indication in the record that Campbell herself had directly petitioned the Probate Court for payment of her fees pursuant to G.L.C. 215, §39A Therefore, we do not address the question of whether, if she had so petitioned, she would now be bound by the Probate Court’s determination. From what has been included in the record, it appears unlikely that a §39A petition was filed by Campbell. She had already received at least partial payment for her services. Moreover, under §39A, the Probate Court judge could have ordered Campbell “to refund [any] excess” fees received instead of giving Campbell the option to make such a refund.

 In this regard, it should be noted that the Probate Court judge indicated that he was “not saying that Campbell didn’t put the time in that [she] billed for.”

 Toner is a “different party” in this District Court action where she has been sued in her individual or private capacity. In the Probate Court, Toner was a party only in her capacity as executrix. See Eaton v. Walker, 244 Mass. 23, 31 (1923).