Coven, J.
This is a breach of contract action by plaintiff-attorney Diana Butt Campbell (“Campbell”) to recover $24,466.11 in unpaid fees allegedly owed for legal services rendered in the probate of an estate for which defendant Nancy C. Toner (‘Toner”) was the executrix.
After a summary judgment for Toner was vacated by this Division,[1] the action was tried without a jury. The trial judge found that Toner did not contract with Campbell in an individual capacity and was thus not personally liable for legal services Campbell provided to her in her role as executrix. Judgment was entered for Toner, and Campbell filed this Dist./Mun. Cts. R. A. D. A., Rule 8C, appeal.
Toner’s aunt, Margaret Rose Dodge (“Dodge”), died testate on June 1, 1996. Toner’s mother, Lillian Hodgkin (“Hodgkin”), was the principal beneficiary of Dodge’s estate and the named executrix. Hodgkin’s failing health prevented her from assuming that duty and Toner, the alternate executrix, was selected.
Campbell had drafted Dodge’s will. On June 28, 1996, Toner signed a retainer agreement with Campbell “to represent [her] in the probate matter (estate) involving the estate of MARGARET ROSE DODGE.” In addition to stating Campbell’s hourly rates, the form agreement required Toner to pay a $200.00 initial retainer and a $2,500.00 prepayment upon contract signing. That provision was modified by an asterisk and corresponding notation designating the time for the initial payments as “upon [Toner’s] appointment as executrix.” The agreement also contained the following provision: “I [Toner] understand that I have primary and direct responsibility for the prompt payment of all attorney’s fees, costs and disbursements.” Toner was appointed the executrix of Dodge’s estate on September 16,1996.
During the protracted probate of the estate, Campbell billed Toner for legal services she performed. The bills were addressed to Toner personally and all but three required payment upon receipt. The remaining three bills for services rendered in the early stages of the attorney-client relationship bore an asterisk and notation that the bills were “to be paid upon appointment as executrix.” The record indicates that estate funds were used to pay Campbell for the services billed.
*8 Campbell received almost $30,000.00. The Probate Court appointed a guardian ad litem in November, 2000, however, to investigate the “inordinate delay in administering the estate” and to determine if Campbell's legal fees were “reasonable and proper.” Based on the guardian’s conclusion that Campbell’s charges were excessive, the Probate Court ordered her to return $14,133.56 in legal fees and expenses paid to her by the estate. Campbell thereafter commenced this action against Toner to recover the money returned to the estate plus an additional $10,000.00 in fees she charged after the Probate Court ruling.
In her written findings, the trial judge stated that the issue in this case was whether Toner contracted with Campbell in her individual capacity. The judge concluded “that at no time did Ms. Toner become obligated personally to Atty. Campbell for attorney’s fees.” Implicit in the judge’s findings is the suggestion that because Campbell was aware that Toner executed the retainer agreement in anticipation of her role as executrix, Campbell intended to seek legal fees from the estate alone and to excuse Toner from any personal liability.
1. A party acting in the capacity of an executrix is “a different person in law” from the same party acting in an individual capacity. Eaton v. Walker, 244 Mass. 23, 31 (1923). To the extent it reflects this principle, there was no error in the judge’s finding that Toner executed the retainer agreement in anticipation of her appointment as executrix and that Campbell understood the same. Campbell admitted as much in her direct testimony.[2]
Recognition of the separate legal identities of Toner as an individual and as an executrix of Dodge’s estate is not, however, dispositive of the issue of Toner’s personal liability in this case. Generally, an executor is liable personally on any contract made by him in handling the business of the estate. Reilly v. Whiting, 332 Mass. 745, 746-747 (1955); The Anglo-American Direct Tea Trading Co. v. Seward, 294 Mass. 349, 351 (1936). With respect to contracts for legal services,
The general rule is that attorneys at law, employed by a personal representative of a decedent to furnish legal services and make incidental disbursements in behalf of and for the benefit of the estate, have no claim against; the estate as such for legal services rendered and incidental expenses incurred or disbursed in connection with the administration of the estate, but must look to the personal representative of the estate who employed them for the settlement of their claim, the representative of the estate being entitled to reimbursements from the estate for reasonable attorneys’ fees and disbursements necessarily incurred in the administration of the estate.
Tomlinson v. Flanagan, 287 Mass. 38, 44-45 (1934) and cases cited. An exception to this general rule may be found only where there is an “express or implied” agreement between the executrix and a third party to absolve the executrix of personal liability on the parties’ contract. Reilly v. Whiting, supra at 746-747; The Anglo-American Direct Tea Trading Co. v. Seward, supra at 351. The ultimate issue on this appeal, therefore, is whether the evidence supports a finding, consistent with the trial court’s judgment, that Campbell and Toner agreed that Toner would not be personally obligated to pay for Campbell’s legal services.
2. We turn to the parties’ retainer agreement. “In interpreting contracts, words that are plain and free from ambiguity must be construed in their usual and ordinary sense.” Cady v. Marcella, 49 Mass. App. Ct. 334, 338 (2000). Contract language is ambiguous only where its
terms are inconsistent on their face or where the phraseology can sup *9 port reasonable differences of opinion as to the meaning of the words employed and the obligations undertaken. Fashion Home, Inc. v. K-Man Corp., 892 F.2d 1076, 1083 (1st Cir. 1989). However, ‘an ambiguity is not created simply because a controversy exists between parties, each favoring an interpretation contrary to the other’s.’ Jefferson Ins. Co. v Holyoke, 23 Mass. App. Ct. 472, 475 (1987).
Suffolk Construction Co. v. Lanco Scaffolding Co., 47 Mass. App. Ct. 726, 729 (1999). If there is a genuine ambiguity, the
writing is construed against the author of the doubtful language, if the circumstances surrounding its use and the ordinary meaning of the words do not indicate the intended meaning of the language. The author of the ambiguous term is held to any reasonable interpretation attributed to that term which is relied on by the other party [citations omitted],
Merrimack Valley Nat’l Bank v. Baird, 372 Mass. 721, 724 (1977). The principle that an ambiguous contract will be interpreted against the drafter is particularly applicable where the writing is an agreement drafted by an attorney to establish an attorney-client relationship. Benalcazar v. Goldsmith, 400 Mass. 111, 114 (1987); Beatty v. NP Corp., 31 Mass. App. Ct. 606, 612 (1991).
The retainer agreement in this case unequivocally states feat Toner had fee “primary and direct responsibility for fee prompt payment of all attorney’s fees, costs and disbursements.” Toner contends feat the asterisked notations in both fee agreement and fee first three billing statements create an ambiguity as to her personal liability and feat such ambiguity must be construed against Campbell. However, fee phrase “upon [her] appointment as executrix,” used to defer fee time for payment of fee retainer and prepayment fee, and fee phrase “to be paid upon appointment as executrix,” which postponed fee due dates of three bills otherwise payable upon receipt, can be reasonably construed as altering only fee time for payment rather than fee obligation to make payment The attorney-client relationship contemplated by fee parties’ agreement could have come into existence only upon Toner’s appointment as executrix as it was only at feat point feat she could have authorized Campbell to perform legal services on behalf of fee estate. Delaying payment for legal services until such time as they were properly authorized by fee executrix or required by fee probating of fee estate was not inconsistent wife holding fee executrix personally responsible for “prompt payment” for those legal services in accordance wife established legal principles as well as fee clear language of fee parties’ agreement
Accordingly, the judgment for Toner is vacated. This action is returned to the trial court for an evidentiary hearing to determine what, if any, fees and expenses remain unpaid for legal services which were specifically rendered by Campbell to probate the estate of Margaret Dodge and which were not included in fee Probate Court’s prior award.[3] Judgment is then to be entered for Campbell in that amount.
The costs of this appeal shall not be taxed under Dist/Mun. Cts. R A D. A, Rule 26.
So ordered.

 The sole ground for Toner’s motion for summary judgment was that Campbell’s contract action was barred by the doctrine of res judicata. Toner argued that because the Probate Court had determined the amount of reasonable attorneys fees due to Campbell from the estate and had concluded that any amount in excess of its award was not justified, Campbell was precluded from relitigating her claim for the unpaid balance of her legal bills. Ruling that the doctrine of issue preclusion was inapplicable because of the nature of the fee assessment and the proceedings in the Probate Court, we reversed the allowance of Toner’s summary judgment motion and returned file action to the Ipswich District Court for trial. Campbell v. Toner, 2003 Mass. App. Div. 17.

 During direct examination by her attorney, Campbell was referred to the retainer agreement and asked whether it was her “feeling that [she] w[as] representing [Toner] and [Toner’s] association with the estate.” Campbell answered, “Yes.”

 Campbell admitted that she performed work for Toner feat would not be considered legal services performed on behalf of an executrix. Most of this other work concerned fee “guardianship or conservatorship” of Toner’s mother. It is not clear whether Campbell has included legal fees not associated with the attorney-client relationship established by the terms of fee parties’ agreement.